## WILLIAMS v. PETERSON.

No. 5460. Decided July 3, 1935. (46 P. [2d] 674.)

528

L. B. *Wight*, of Salt Lake City, for appellant.

*Stewart, Alexander & Budge*, of Salt Lake City, for respondent.

WOOLLEY, District Judge.

This is a suit to set aside a mortgage which George Peterson, husband of the defendant Mary R. Peterson, executed in her favor, and which covers his undivided one-half interest in a farm which is owned by them jointly. The reason for the suit is that the plaintiff has a judgment upon which there is a balance due of $2,437.10 against George Peterson upon which he is unable to make satisfaction, because of the insolvency of the judgment debtor, unless the mortgage be set aside so that his interest in the farm may be sold upon execution free from the encumbrance.

The gravamen of the complaint is that the promissory note for $5,220 to secure which the mortgage was given does not represent a real and bona fide indebtedness owing from George Peterson to Mary R. Peterson, but represents a pretended and fictitious indebtedness, and that the promissory note and mortgage were given without any consideration passing from the mortgagee to the mortgagor; and that the note and mortgage were given to defraud the plaintiff and to prevent him from collecting the amount due upon his judgment. In her answer the defendant denies the allegations of the complaint to the effect that there was no consideration for the mortgage and that it was given to defraud the plaintiff; and affirmatively alleges that she owns and has owned since prior to her marriage to George Peter-

son an estate consisting of both real and personal property, which estate, since her said marriage, has been kept separate and apart from the estate of George Peterson and the joint estate of the defendant and her husband; and that George Peterson, for advances made and money loaned to him prior to September 29, 1929, became indebted to her in the sum of $4,500, for which amount on said day he gave her his promissory note; and that on September 29, 1931, which was the date when said note became due, the same not being paid, he gave her his note in lieu thereof for the sum of $5,220, that being the amount of principal and interest then due, and the mortgage involved in this suit to secure the payment thereof. The defendant further alleges by way of separate answer and defense that she is the wife of George Peterson and resides with him as a family in Riverton in Salt Lake county, state of Utah, upon the farm above mentioned; that George Peterson has made no declaration for a homestead for said family; that out of his property she claims a homestead in his undivided one-half interest in said farm; and that said property is of the reasonable value of $4,500 and is subject to a mortgage to the defendant for $5,220.

From a decree in favor of the plaintiff which canceled and set aside the mortgage, the defendant appeals. There are seven alleged errors assigned, the first of which goes to rulings made by the trial court in refusing to admit certain evidence tendered by the defendant, and the others all going to the question of fraud or consideration for the mortgage. The parties will be referred to herein as they appeared in the trial court.

The first assignment of error, which is that the court erred in refusing to admit upon cross-examination of the plaintiff testimony offered to the effect that the notes given by E. A. Peterson and George Peterson, on which notes plaintiff obtained a judgment against George Peterson, were given for the purchase of 2,000 shares of Neon Displays stock at $1 per share, must be disregarded

by this court upon this appeal. On two different occasions the evidence mentioned was offered, and twice was it rejected by the trial court. Upon neither occasion did counsel for the defendant reserve an exception to the adverse ruling. The law at that time required that exceptions be reserved to adverse rulings upon the admission and rejection of evidence to entitle a party to a civil proceeding to have the same reviewed by this court. *Knapp* v. *Knapp,* 73 Utah 268, 273 P. 512. This rule, however, has since been changed by statute so that now all such rulings are deemed excepted to. R. S. Utah 1933, 104-39-2. Assuming that in this case we are to be controlled by the rule which prevailed when the case was tried, we pass the first assignment of error, and proceed to a consideration of the merits of the case.

The question of fraud in the last analysis resolves itself into the question of whether or not the mortgage was given to secure the payment of an actual and bona fide debt which was owing by George Peterson to his wife, Mary R. Peterson, or whether it was given without any consideration whatever. The trial court found in harmony with the theory of the plaintiff's complaint that there was no debt and hence no consideration. Such findings are assigned as error. It is claimed they are contrary to the evidence. This being an equity case, the defendant is entitled under said assignments to a review of the evidence by this court and to the judgment of this court as to the effect thereof upon the issues of fraud and consideration. The defendant was called as a witness for the plaintiff. The truthfulness of her testimony is not challenged. The substance of her testimony as contained in the printed abstract, omitting details as much as possible, is as follows: She is the wife of George Peterson. They intermarried in 1905. She was a widow and inherited from her former husband a house and about 10 acres of land in Idaho. About the year 1907 her present husband went to Bingham Canyon, Utah, where he was employed by a mining company. His wages were $3 or $3.25 per day. She joined him in Bingham Can-

yon about one year later. He had an account with a bank in Salt Lake City; but after she went to Bingham Canyon, he placed the bank account in their joint names. After about two years in Bingham Canyon, the wife went to live in Salt Lake City, where they purchased a home on 9 East street and Yale avenue, for which they paid about $3,500, and which was owned by them jointly. It was paid for out of their joint bank account. Up to the time they purchased this property, her husband had been steadily employed and his wages had been increased to $300 per month. Before she went to Bingham Canyon she had sold her house in Idaho for $500, which was deposited in her husband's bank account. She took no note for it and nothing was said between them about him paying it back to her. She did not think there was any other money which she received individually, used in the purchase of the 9 East street property. She lived at the 9 East street home for eighteen months, during which time her husband worked at Bingham Canyon and sent his wage checks to the bank for deposit in their joint account. She contributed nothing to the joint account while she lived in Salt Lake City; but she drew checks upon that account for family expenses as she desired. Then Mr. Peterson went to Canada, where he worked for a mining company; his wages being $300 per month plus certain bonuses. After he had been in Canada about one year, she joined him there and they resided in Canada for sixteen years. Three years after she went to Canada she took over the management of a hotel, which she continued to manage for twenty-two months at a wage of $100 per month. From this employment she received $2,200 which she deposited in a joint bank account which they maintained there. While they resided in Canada she sold some cattle which she had raised; received for them $1,050 which she deposited in one of their joint bank accounts, either in Canada or in Salt Lake City. She also sold her Idaho land for $1,000 and put that money in their joint account. During the years of their married life and before they returned to Utah, Mr.

Peterson had accumulated several thousand dollars in their joint bank account and had made investments from that account amounting to $6,000 or $7,000. She had made no investments. She had taken no note or other evidence of indebtedness from her husband and did not regard herself as his creditor. They returned to Utah on November 6, 1927. Six years prior to their return they purchased a 38-acre farm at Riverton, in Salt Lake county, Utah, which is the property with which we are concerned in this case. They paid for it $6,800; turned the 9 East street property in on the deal for $2,500 to $2,800, and paid the balance in installments out of their joint account. They took the deed to the farm in their joint names and it has stood in their joint names since.

She first received a promissory note from her husband on September 29, 1929, which was for $4,500, payable two years after date with interest at 7 per cent. She did not lend him any money at that time. He was going into a hazardous business, an electric sign business, investing at least $5,000, and she asked him for a note for security to her to compensate her for the money he was investing. She told him he owed her money but did not tell him the amount, and the amount of the note had no relation to the amount he owed her. She objected to him going into the Neon sign business because she felt it was hazardous and she asked him for a little protection to herself in case he suffered a loss in that investment. The note for $4,500 was not paid when it became due and she asked him for security. He made out a renewal note for $5,220, which is the amount of the first note plus accrued interest for two years, and executed the mortgage which is described in the complaint, to secure payment of the same.

She also testified that she did not think there was any time, from the time they established the joint account in the bank until that account was withdrawn, or a large part of it, in 1929, that she could not have written her check for the amount she had in that account; that the money with

which her husband purchased his interest in the Neon Displays company, about $5,000, came out of their joint account at about the time she received the $4,500 note; and that at the time this note was executed, Mr. Peterson took practically all of their joint account from the bank.

Copies of the two notes above mentioned and the mortgage were put in evidence. The $5,220 note is dated September 29, 1931, and the mortgage was signed and acknowledged on October 13, 1931. The evidence shows that on May 8, 1928, there was a balance to the credit of Mr. and Mrs. George Peterson in their joint savings account in a Salt Lake City bank of $19,384, which had been reduced by September 30, 1929, to $813.42; and it was stipulated that all withdrawals from that account had been made by George Peterson. It was also stipulated that on September 30, 1929, he paid the sum of $4,602 into the electric sign business in which he was investing, and that since March 6, 1928, he had withdrawn from the savings account sums aggregating $8,000.

It is a fair deduction also from certain portions of Mrs. Peterson's testimony which have been omitted from the above resume and other admitted facts in the case, that at the time George Peterson signed the $4,500 note in favor of his wife, he owed no debts whatever but was possessed of assets of several thousand dollars in value; in short, that he was solvent; and there is no evidence to show that at that time he was about to incur debts beyond his ability to pay as they should mature.

It is alleged in the complaint, however, and admitted by the answer, that on March 13, 1931, he, with one E. A. Peterson, executed two promissory notes for $1,000 each, payable to Davis County Bank at Farmington, Utah, and delivered to the bank as collateral security for the payment of said notes certificates for 6,000 shares of the capital stock of the Neon Displays, Incorporated; that said notes were not paid when due; that on October 19, 1931, plaintiff, who was then the owner of said notes, commenced suit there-

on; and that on January 28, 1932, plaintiff recovered judgment in that action. It also appears by the record that the security above mentioned was sold by the sheriff to the plaintiff for $25, which amount was credited on said judgment, leaving a balance due of $2,437.10.

It seems to us that the $4,500 note is shown to be supported by a valuable consideration, and if this is so, then the note itself is written evidence of a debt then created and thereafter existing and owing by the husband to the wife. The Negotiable Instruments Law declares that ■ value is any consideration sufficient to support a simple contract. R. S. 1933, 61-1-26. Any benefit to the promisor, or loss or detriment to the promisee, is a sufficient consideration to support a simple contract. 13 C. J. 311. It is apparent from the evidence that Mrs. Peterson owned a substantial interest in the funds on deposit in the joint bank account. She had put $4,750 into their various joint accounts and had made no investments therefrom. The only just inference from the evidence in regard to the ownership of the joint account is that Mr. and Mrs. Peterson regarded it as belonging, not to him alone, but to both of them; and there is no reason so far as we perceive why the courts should regard it otherwise. Her husband was about to invest a portion of those funds in a manner which she did not favor. She told him that he owed her money and that if he did make the contemplated investment he ought to give her a note for an equal amount to protect her against loss in case the investment were lost. She testified:

"He was going to, into a hazardous business, investing some money, at least $5,000.00, and I asked for the note for security to me in compensation for the money that he was investing in business."

If he had insisted over her objections in wtihdrawing all of the funds in the joint account and using the money for his own purposes, she would have been entitled to demand an accounting, or she could have maintained an action against him therefor, under Comp. Laws Utah 1917, § 2988 (R. S. 1933, 40-2-6) which reads:

"Should the husband or wife obtain possession or control of property belonging to the other before or after marriage, the owner of the property may maintain an action therefor, or for any right growing out of the same, in the same manner and to the extent as if they were unmarried."

When she objected to the investment unless he gave her a note for an equal amount and told him he owed her money, although the amount which she claimed was not stated or mentioned, he made out the note for $4,500 and gave it to her, and he thereupon withdrew from the joint account all the funds remaining therein. He thus acknowledged the justice of her claim to a joint interest in the bank account and that there was some indebtedness due from him to her. By accepting the note she waived in his favor her interest in the account and permitted him to use her share of those funds as he desired, and in effect the parties adjusted their accounts and property rights. If they had not been married to each other, it is safe to say that no one would question the sufficiency of the consideration to sustain this note. She gave up a valuable right and he obtained a corresponding benefit.

There is no reason in law or morals why George Peterson and his wife could not do exactly what the evidence shows they did with respect to their property rights and the $4,500 note. When he executed that note, George Peterson was solvent and he owed no other debts whatever; and there is no evidence to show that he was then about to incur obligations and debts beyond his ability to pay as they matured. So there were no creditors actual or prospective whose rights could be affected by what they did. It was not until March 13, 1931, when George Peterson and E. A. Peterson signed the notes upon which plaintiff afterward obtained his judgment against George Peterson, that George Peterson became involved in debts beyond his ability to pay. In this state by constitutional provisions and statutory enactments the common-law disabilities of married women have been abrogated, and married women

are in all respects, with reference to their separate property and power to contract, on the same footing as other persons. Const. art. 22, § 2; R. S. 1933, 40-2-1 to 40-2-10, both inclusive; *Culmer* v. *Wilson*, 13 Utah 129, 44 P. 833, 57 Am. St. Rep. 713; 20 A. L. R. 528; *Morrison, Merrill Co.* v. *Clark*, 20 Utah 432, 59 P. 235, 77 Am. St. Rep. 924. The note of September 29, 1931, was simply a renewal of the $4,500 note. If there was an actual and bona fide debt evidenced by the latter, as we think there was, then the former note was likewise an evidence of that same debt with the accrued interest added. The mortgage being given to secure the payment of this debt, it was based upon a valuable consideration.

The fact that the mortgage was given by a husband to his wife does not impair its validity.

"A conveyance, transfer or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons." Comp. Laws 1917, § 2985; same section in R. S. 1933, 40-2-3.

Standing as she did in the position of any other creditor of her husband, she had the right, when the note was not paid, to demand and receive security for a renewal note. The fact that George Peterson was insolvent when he executed the mortgage, and had by that time incurred debts and obligations beyond his ability to pay, cannot affect the validity of the mortgage if the $4,500 note did, in fact, evidence an actual and bona fide debt, for the giving of the mortgage was a mere preference.

In support of the findings and judgment the plaintiff advances, among others which have been disposed of in what has already been said, the proposition that if past advances were made by Mary R. Peterson to George Peterson they would not make her a creditor of him. Reference is made in this connection to her testimony to the effect that at the time she deposited the moneys she received from the sale of her property and from her personal earnings, she took no note or other evidence of indebtedness from her husband,

and as a matter of fact did not at that time consider herself a creditor of her husband. In support of the above proposition, the following cases are cited: *Bast* v. *Bast*, 68 Mont. 69, 217 P. 345, 347; *Roman* v. *Albert*, 81 Mont. 393, 264 P. 115; *Churchill & Alden Co.* v. *Ramsey*, 50 S. D. 73, 208 N. W. 406; *Agnew* v. *Agnes*, 67 Colo. 81, 185 P. 259; *Kanawha Valley Bank* v. *Atkinson*, 32 W. Va. 203, 9 S. E. 175, 25 Am. St. Rep. 806; *Carr* v. *Way*, 141 Iowa 245, 119 N. W. 700; *Kuhn* v. *Stansfield*, 28 Md. 210, 92 Am. Dec. 681. The doctrine of those cases is stated in the Montana case of *Bast* v. *Bast* in the following language:

"The unexplained payment of money by a wife to her husband does not raise a presumption that a loan was intended, and she cannot enforce payment. Our statute, which gives to a married woman the rights which emancipate her from most of the disabilities of coverture and vests her with the legal capacities of a feme sole, does not abrogate the marital relation, so as to lay a foundation for the presumption that the advance of money by a wife to her husband is a loan or create the relation of debtor and creditor. * * * The law presumes that an advance of money by a wife to her husband is a gift, a gratuity; no contractual relationship is presumed, and no obligation arises therefrom. The allegation in the complaint that the husband had used money belonging to plaintiff for the payment of his own obligations does not tend to imply that the parties intended that any contract liability would arise. Therefore the respondent cannot and never could recover the money advanced by her."

We have no criticism to offer of that doctrine. But it does not apply to this case, because here the court does not have to resort to presumptions to determine the rights of the husband and wife with respect to the funds in the joint account. There is here an express written contract by the husband to pay his wife a certain sum, executed at a time when he had the right to do as he pleased with his property so far as creditors were concerned and based upon a valuable consideration. Furthermore, the proposition above stated is based upon the assumption that when she deposited her funds in the joint bank account she thereby advanced those funds to her husband. The parties do not seem to have regarded the matter in that light and no reason occurs

to us why we should do so. She retained the right to and did draw upon that joint account; and there was no occasion for her to take any note or evidence of indebtedness from him when she deposited her funds therein. So the proposition seems to be based upon an erroneous assumption. The plaintiff also lays down the proposition that the note could not be valid as a gift. But as no such claim is made in this court, we do not feel obliged to discuss that subject.

The trial court failed or refused to make any findings with reference to whether or not the mortgaged property was exempt from execution under the homestead law. The defendant stated a good defense in her answer on this ground, for if the property was exempt it is wholly immaterial so far as the plaintiff is concerned whether or not there was any consideration for the mortgage. The plaintiff as a creditor of George Peterson could not be injured by his giving a mortgage upon exempt property. *Daniels* v. *Smith,* 51 Utah 144, 169 P. 267; *Payson Exchange Savings Bank* v. *Tietjen,* 63 Utah 321, 225 P. 598. This failure or omission of the trial court is made the basis of one of the defendant's assignments of error. The plaintiff attempts to justify the trial court by saying: (1) The land on which the homestead exemption is claimed, whether the undivided one-half interest of George Peterson, or the undivided one-half interest of Mary R. Peterson, in the Riverton property, is not shown by the evidence. As to this, it is sufficient to point out that the defendant in her answer distinctly alleges that she claims the exemption in the undivided one-half interest of George Peterson in the Riverton farm. For her to have reiterated that claim in her testimony would have added nothing. The plaintiff could not be in doubt or uncertainty as to what her claim is in this respect. (2) The defendant in the court below had the burden of introducing evidence to support her claim to a homestead exemption, citing 29 C. J. 989. The answer to this is that the plaintiff's own evidence shows the facts upon which the right to the homestead exemption is based,

so there was no need for the defendant to produce evidence thereon. The plaintiff's evidence shows that George Peterson and Mary R. Peterson were husband and wife and had been such from 1905 to the day of the trial; that they were residents of the state of Utah when this mortgage was executed and continued to reside herein to the day of the trial; that George Peterson owned no other land except his interest in the mortgaged property; and that they had no children. These facts, being shown, are sufficient to support a finding or conclusion that George Peterson was entitled to claim an exemption of $2,000 for himself and $750 additional for his wife in the real property which he mortgaged. R. S. 1933, 38-0-1, 38-0-5, and 38-0-6. And upon the failure of the husband, he being the judgment debtor, to claim and select a homestead, it is the privilege of the wife to do so. R. S. 1933, 38-0-8.

The plaintiff's evidence also shows affirmatively that Mrs. Peterson had filed a declaration of homestead in the county recorder's office, but plaintiff suggests (3) that neither the declaration nor a copy thereof was put in evidence. To this we remark that, since the failure to make a declaration does not impair the homestead right (R. S. 1933, 38-0-10), we do not see how a failure of the defendant to put in evidence the homestead declaration or a copy thereof can in any way justify the court in failing to find upon this defense. There was evidence to warrant the court in finding that George Peterson's undivided one-half interest in the property was exempt under the homestead law to the extent of $2,750 of the value thereof. It was therefore error for the court, since this claim or defense is set up in the answer, to fail or refuse to make some finding or conclusion to that effect. The plaintiff says that furthermore there is no evidence to show the amount claimed as exempt and no evidence to show that the property was of a value which is within the exemption claimed, citing 29 C. J. 989. The answer to this is that plaintiff's own evidence showed that George Peterson is entitled to claim

an exemption to the value of $2,750, and if she, in the absence of her husband making any claim, desired more than that, of course she had the burden of bringing forward evidence to support such claim. On the other hand, if the plaintiff claimed that the interest of George Peterson in the property exceeded the homestead exemption in value, the burden was upon plaintiff to prove that fact, if, indeed, that fact has any importance whatever in the case. That is the logic of the situation, and a reading of the whole of paragraph 460 on page 989 of 29 Corpus Juris will demonstrate its correctness. The only thing lacking in the whole case to support every essential allegation of her answer in respect to the homestead matter is proof that her husband had failed to make a homestead claim or selection. There is no evidence upon this point, and it may be that for this reason the homestead defense is not completely established; but the subject is not mentioned in the briefs and was not alluded to in argument, and we therefore do not feel obliged to express any opinion upon the point.

The judgment is wrong on the merits of the case and should be reversed and the case remanded, with directions to the trial court to make findings and judgment in favor of the defendant. Costs to appellant. Such is the order.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.