Lorraine Kimball **BLACK** and Reading
Black, Plaintiffs,

v.

**UNITED STATES** of America and Philco
Distributors, Inc., Defendants.

No. C 138–66.

United States District Court
D. Utah,
Central Division.

Feb. 8, 1967.

Max K. Mangum, of Mulliner, Prince &
Mangum, Salt Lake City, Utah, for plain-
tiffs.

Ralph Klemm, Asst. U. S. Atty., for
defendant the United States.

Ray R. Christensen, of Christensen &
Jensen, Salt Lake City, Utah, for defend-
ant Philco Distributors, Inc.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

This case requires the court to determine whether in Utah a husband can maintain an action for loss of consortium by reason of negligent injury of his wife by a third person.

In the first and third claims of the amended complaint the plaintiff wife, Lorraine Kimball Black, seeks damages against the respective defendants for personal injuries which she asserts were caused by the negligence of the defendants and allegedly resulted in the loss of her right arm at the elbow joint and further amputation above the joint, hospitalization and pain and suffering, both physical and mental in nature, permanent injuries of both physical and mental nature necessitating further care, treatment and assistance during the remainder of her natural life, expenses for medical care and treatment, loss of earning power, permanent sickness, lameness, disfigurement and disablement, to said plaintiff's total damage in the sum of $150,000.

In the second and fourth claims plaintiff Reading Black refers to the same injuries allegedly suffered by his wife and further alleges:

"1. That as the husband of Lorraine Kimball Black, he is entitled to the services, aid, comfort, society and companionship of his wife, but that the injury * * * will deter and prevent him from enjoying these rights and privileges for the duration of their married life.

"2. That because of the negligent interference with these marital rights, sometimes referred to as loss of consortium, plaintiff Reading Black has suffered damages at the hands of the defendant in the total amount of Twenty-Five Thousand Dollars ($25,000)."

Co-defendants, United States of America and Philco Distributors, Inc., have moved to strike the second and fourth claims on the contention that Utah law does not recognize the right to recover damages for loss of consortium. These motions have been orally argued and briefed and the parties have now submitted them for decision. The question seemingly has not been expressly considered or decided before in any published opinion in this state.

Under the Federal Tort Claims Act [1] damages may be allowed to either party to the marriage contract for loss of consortium caused by injury to the spouse where consortium is a proper element of damage under state law.[2] Hence, the motions of the respective defendants present precisely the same question.

At common law a husband had a claim for loss of consortium against one who negligently injured his wife, though the wife had no corresponding right.[3] It must be determined whether this rule with respect to a husband's rights has been modified in Utah by statute or judicial decisions and practice, or both.

Prior to statehood Utah Compiled Laws 1888 ¶ 2529 provided that either spouse may sue or be sued, plead and be impleaded, or defend and be defended at law.

---

1. 28 U.S.C.A. § 1346(b).

2. Redding v. United States, 196 F.Supp. 871 (W.D.Ark.1961); Bologach v. United States, 122 F.Supp. 502 (M.D.Pa. 1954); cf. O'Neil v. United States, 92 U. S.App.D.C. 96, 202 F.2d 366 (D.C.Cir. 1953) (where consortium damages to the wife were denied because the laws of Maryland, where the injury occurred, did not allow such damages). See also Wright, The Federal Tort Claims Act 74–75 (1957).

3. See generally 27 Am.Jur. Husband and Wife §§ 499–513 (1954); Prosser, Torts § 104 (2d Ed. 1955); Anno., 23 A.L.R. 2d 1378 (1952); Anno., 133 A.L.R. 1156 (1941); cf. Hitaffer v. Argonne Company, 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366 (1950) cert. den. 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), overruled on a different point, Smither & Company, Inc. v. Coles, 100 U.S.App. D.C. 68, 242 F.2d 220 (1957).

Article 22 § 2 of the Constitution of Utah, (formulated in 1895) provides as follows:

"Sec. 2 [Property rights of married women]

"Real and personal estate of every female, acquired before marriage, and all property to which she may afterwards become entitled by purchase, gift, grant, inheritance or devise, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations or engagements of her husband, and may be conveyed, devised or bequeathed by her as if she were unmarried." [4]

In keeping with this spirit it has been provided by statute in Utah:

"30-2-2. Wife's right to contract, sue and be sued.—Contracts may be made by a wife, and liabilities incurred and enforced by or against her, to the same extent and in the same manner as if she were unmarried." [5]

"30-2-4. Wife's right to wages—Actions for personal injury.—A wife may receive the wages for her personal labor, maintain an action therefor in her own name and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried. There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband." [6]

It might be interesting, if not necessary or profitable in the present inquiry, to weigh generally the conceptual, historical, practical and decisional reasons why husbands should or should not be entitled to recover damages for loss of consortium negligently occasioned by third parties, or why wives should or should not be allowed corresponding rights.[7] It certainly is not irrelevant to note that the weight of judicial authority throughout the United States permits the former recovery even under so-called married women's acts. Yet, the history of the doctrine in Utah, the wording of the Utah Married Women's Act, and the course of pertinent legal practices and decisions here (as has been said of Utah's people) in some ways may be peculiar or unique.

■■ Moreover, I have a peculiar responsibility in interpreting the law in diversity cases such as this—to decide such cases not necessarily in consonance with my ideas of logic, principle or weight of authority, but in harmony with the decisions of the highest court of the state. Where, as appears here, the state Supreme Court has not had occasion to pass upon the particular question, it still is my duty to ascertain the best I

4. It was said in Williams v. Peterson, 86 Utah 526, 46 P.2d 674 (1935), that: "In this state by constitutional provisions and statutory enactments the common-law disabilities of married women have been abrogated, and married women are in all respects, with reference to their separate property and power to contract, on the same footing as other persons." During the constitutional convention it was declared by Mr. Howard: "We have in this convention been working hard to give women equal rights with men and we have done so up to the present time and I propose to giving them the same rights in this. (The motions he spoke of related to the inclusion of the word "pur-

chase" in the provision concerning married women and was carried.) Proceedings Const. Convention (1895) Utah, Vol. II, p. 1782.

5. Utah Code Annotated 1953 § 30-2-2; R.S.1898 & Compiled Laws 1907 ¶ 1199; Compiled Laws 1917 ¶ 2984; Revised Statutes 1933 and C.1943, 40-2-2.

6. Utah Code Annotated 1953, § 30-2-4; R.S.1898 & C.L.1907, § 1201; C.L.1917, § 2986; R.S.1933 & C. 1943, 40-2-4.

7. For a concise review of these considerations and related judicial decisions see "Judicial Treatment of Negligent Invasion of Consortium" 61 Columbia L.Rev. 1341–1357 (1961).

can from all available sources what the local law is and apply it.[8]

Section 30-2-4, Utah Code Annotated 1953, is the crucial section upon which this case turns. Its progenitor, adapted shortly after statehood, was Section 1201 of Revised Statutes of Utah 1898, which section has continued substantially unchanged down to the present time. This section in part was drawn from McClain's Annotated Code of Iowa § 3402 (1898), but inserted by our legislators was the last sentence which reads:

> "There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband."

The insertion of this sentence makes the Utah statute significantly distinguishable from most other married women's acts which are construed to permit a husband's recovery for loss of consortium. But for this distinguishing factor, it could be correctly argued that when Utah enacted its statute, it adapted Iowa's body of case law interpreting that particular section up until that point of time.[9] On the contrary, the specific wording of the Utah statute seems to reject that line of decision.

The compiler's note for Section 30-2-4 of Utah Code Annotated 1953, states that comparable provisions are found also in Illinois Revised Statutes 1949, chapter 68, § 7, and Michigan Compiled Laws 1948, § 557.11. Upon examination of these statutes it is immediately apparent that they are similar only in their treatment of the wife's right to her own earnings, and say nothing with regard to the husband's right of recovery on account of injury to his wife.

It is interesting to note Virginia's statute providing for the right of a married woman to contract, and sue and be sued. The controlling provision is Section 55-36 of the Code of Virginia 1950.[10] Conceding that Virginia's statute is more specific with regard to the matter of consortium than that of Utah's, the two statutes are quite similar in many respects. Both affirmatively deny the husband a right of recovery or action for the personal injury of the wife, and in

---

8. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Criqui v. Blaw-Knox Corporation, 318 F.2d 811 (10th Cir. 1963); Fisher v. Firemen's Fund Indemnity Co., 244 F.2d 194 (10th Cir. 1957).

9. See the cases of Neumeister v. City of Dubuque, 47 Iowa 465 (1877), and McKinney v. Western Stage Co., 4 Iowa 420 (1857), which recognized the right of the husband to sue in his own name whenever the injury to his wife was such that he received special damage, such as loss of society or expense.

10. "Contracts of, and suits by and against, married women.

"A married woman may contract and be contracted with and sue and be sued in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her accrued heretofore or hereafter. In an action by a married woman to recover for a personal injury inflicted on her she may recover the entire damage sustained including the personal injury and expenses arising out of the injury, whether chargeable to her or her husband, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium, and any sum recovered therein shall be chargeable with expenses arising out of the injury, including hospital, medical and funeral expenses, and any person, including the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action, whensoever paid, to the extent to which such payment was justified by services rendered or expenses incurred by the obligee, provided, however, that written notice of such claim for reimbursement, and the amount and items thereof, shall have been served on such married woman and on the defendant prior to any settlement of the sum recovered by her; *and no action for such injury, expenses or loss of services or consortium shall be maintained by the husband.*" (Emphasis added.)

Virginia the courts have recognized that this provision denies the husband the right to maintain an action for loss of his wife's consortium.[11]

Also of interest is Section 23–205 of Kansas Statutes Annotated [12] when compared to Utah's corresponding statute. Once again some affirmative provision is made providing that any right of action for personal injury to the wife shall vest solely in her to the exclusion of her husband. Enacted in 1921, it has subsequently been held that this statute eliminated the husband's separate cause of action.

There has been singularly little litigation in Utah involving claims based on loss of consortium.

In Paul v. Kirkendall, 1 Utah 2d 1, 261 P.2d 670 (1953), in allowing recovery for loss of consortium, the Utah Supreme Court said:

"As to the basis of the jury award of $5,000 to Mr. Paul for loss of his wife's services, the jury could properly consider not only the household help necessary up to the date of the trial, for which respondents were compensated in special damages, but could also consider the fact that work for which help was hired was not all that previously performed by Mrs. Paul. Edminster

v. Thorp, 101 Cal.App.2d 756, 226 P.2d 373. The award must also include the cost of hiring help in the future, as well as damages for those services rendered in the relationship of husband and wife beyond the duties of servants, and this court cannot say as a matter of law that the diminution in the services performed by the wife is to be valued at less than $200 per year for the rest of her life."

This case initially was cited as primary support for plaintiff's contention that Utah law recognized such a right. Later plaintiff's counsel forthrightly conceded that California law was there applied. An examination of the file before the District Court does reveal that the request to charge in the lower court recited the governing effect of this circumstance.[13] It should be noted that at that time even in California the right of a husband to recover for loss of consortium was not entirely settled.[14] Since then it has been held expressly that there is no right to recover for loss of consortium as distinguished from loss of services and expense.[15]

We quote in the margin the charge on the subject as actually given by the trial court in *Paul* since it may be interesting to note the breadth of recovery assumed to be permitted under California

11. For a good discussion of the history of the Virginia statute and the question of whether either spouse may recover for loss of consortium arising out of the injury of the other, see Carey v. Foster, 345 F.2d 772 (4th Cir. 1965).

12. "Loss or impairment of services, right of action; rights of husband. That where, through the wrong of another, a married woman shall sustain personal injuries causing the loss or impairment of her ability to perform services, the right of action to recover damages for such loss or impairment shall vest solely in her, and any recovery therefor, so far as is based upon the loss or impairment of her ability to perform services in the household and in the discharge of her domestic duties, shall be for the benefit of her husband so far as he shall be entitled thereto: *Provided, however,* That nothing herein shall in any way affect the

right of the husband to recover damages for the wrongful death of his wife." See Criqui v. Blaw-Knox Corporation, 318 F. 2d 811 (10th Cir. 1963); Hoffman v. Dautel, 192 Kan. 406, 388 P.2d 615 (1964).

13. Plaintiff's requested Instruction #2 as submitted to the trial court began: "You are instructed that this accident occurred in the City of San Fernando, County of Los Angeles, State of California, and by reason thereof the rights, duties and liabilities of the parties to this action are governed by California law. * * *" (Civil Action No. 26,672, Second Judicial District of the State of Utah, in and for Weber County.)

14. See Deshotel v. Atchison, Topeka & Santa Fe Railway Co., 50 Cal.2d 664, 328 P.2d 449, 450 (1958).

15. West v. City of San Diego, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929 (1960).

law, and to consider whether such a submission would be overlapping or duplicative of the recovery now allowed a wife in Utah for her own personal injuries.[16]

In Rubalcava v. Gisseman,[17] it was held that there is nothing in Section 30–2–4 which authorizes a wife to sue her husband in tort, overruling anything inconsistent in Taylor v. Patten.[18] The case is not in point but the discussion is informative on the viewpoint of the Utah court. After quoting the Utah statute Mr. Justice Crockett, writing for the majority, observed among other things:

> "This language simply takes from the husband the right of action for injury to the wife and gives it to her. Since the husband and wife are the only two persons mentioned, the authorization of the wife to recover 'against a third person' can only reasonably be interpreted as against someone other than the husband. * * *"

In Robinson v. Hreinson,[19] the opinion of the Supreme Court listed among the items of damage in favor of a husband which in a total of $12,896.94 were sustained, the item: "For loss of consortium $742.00." While Paul v. Kirkendall, supra was cited in connection with the entire award, the point annotated did not deal with loss of consortium as such, and there were neither contentions of counsel nor comments by the court on the latter point. On the contrary, the main question was whether the plaintiff had improperly injected into the trial the subject of insurance which prejudiced the jury and unduly enhanced the damages awarded.

In the case of W. W. Clyde and Company v. Dyess, 126 F.2d 719 (10th Cir. 1942), being an appeal from a judgment entered in the United States District Court for the District of Utah, the court stated:

> "This accident occurred in Utah and the suit was instituted there. The place of the wrong and that of the forum concurred. And the community

16. "No. 9. If you find that the plaintiff, Charles J. Paul, is entitled to recover damages by this action, you shall award him a sum that will compensate him reasonably for any loss of his wife's services that he has suffered, or is reasonably certain to suffer in the future as a proximate result of the accident in question.

"In determining that amount, should you decide so to do, your object shall be to fix the pecuniary value of the services thus lost. As to any future loss of the same nature for which you might find him entitled to compensation, your task shall be to fix the present pecuniary value thereof. To that end, you should consider, as shown by the evidence, the character and conditions of the home wherein plaintiffs have dwelled; the services that have been performed by the wife in the management of that household; the fact that there have been children in the home, and the character of the wife's services for the children; the extent to which any work connected with the management of the home has been done by other than the wife; and aid that the wife has given her husband in the management of his business or affairs; and the nature, extent and value of any services of an advisory character, although not involving any manual labor or physi-

cal skill, which have been performed by the wife for the husband.

"The services rendered by a wife to her husband's benefit may be, and often are, of such character that no witness can say what they are worth. Often they have no market-value equivalent. Hence, it is not necessary that there be any direct or express testimony as to the value of a wife's services to entitle her husband to recover for their loss. The relationship she sustains to him is a special and peculiar one, and the actual facts of the case at hand, considered in the light of your own experience, and to the satisfaction of your own consciences, must guide you in estimating the amount which would fairly and justly compensate the husband for his pecuniary loss, if any.

"Our law does not permit you to award the husband any compensation for simply the loss of his wife's society, for the comfort and emotional values of her companionship, that he would have enjoyed except for the accident, but only for the monetary value of lost services, if any, under the instructions heretofore given. You will keep this distinction in mind."

17. 14 Utah 2d 344, 384 P.2d 389 (1963).

18. 2 Utah 2d 404, 275 P.2d 696 (1954).

19. 17 Utah 2d 261, 409 P.2d 121 (1965).

property system does not obtain there. More than that, the material part of section 40-2-4, Revised Statutes of Utah 1933, provides in substance that the husband shall have no right of recovery for personal injuries to the wife, that the wife may recover for such injuries as though she were unmarried, and that the recovery shall include medical and other expenses paid or assumed by the husband. No case has been called to our attention in which the statute was construed. We are therefore obliged to proceed without direction or guidance by the supreme court of the state in respect to the meaning of the local statute. We think the statute, when fairly construed, embraces both substantive and remedial elements. It strips the husband of any right of recovery for personal injuries sustained by the wife arising out of the tort of a third person, and it vests in her the right to recover for such a wrong as though she were an unmarried woman. It places a married woman on equal footing with an unmarried woman in respect to redress for personal injuries growing out of a tort. It empowers a married woman to maintain in her own name a suit to recover for such injuries and it vests in her the recovery therefor to the same extent and for all purposes as though she were a single woman. Cf. Jacobson v. Fullerton, 181 Iowa 1195, 165 N.W. 358. And it fails to indicate any purpose to distinguish between residents and nonresidents of the state." (P. 722.)

Aside from the determination that the Utah statute, when fairly construed, embraces both substantive and remedial elements, this case says hardly more than the Utah statute itself. It implies that the right to recover for loss of consortium does not exist under Utah law, and this suggestion of course should not be ignored by a subordinate court. But it really leaves unanswered whether in stripping the husband of any right of recovery "for personal injuries sustained by the wife arising out of the tort of the third person", the statute leaves him a right to recover "for" consequential damages or expenses sustained "by himself arising out of the tort of a third person". If anything was meant to be said on the latter point it would have been dicta, since the related question involved a conflict of laws and the rule in Texas as an incident of the community property system, that a married woman is precluded from recovering damages for personal injuries suffered as a result of the tort of third persons where her husband was also guilty of contributory negligence. The precise question before the Circuit was whether this rule in Utah would operate to deprive the wife of any recovery for her own injuries where she and her husband were not engaged in a joint enterprise. The court affirmed a judgment in favor of the plaintiff-wife based upon findings of the jury that the defendant was negligent, that such negligence was a proximate cause of the accident, that the husband of plaintiff was also negligent, that such negligence was a proximate cause of the accident, and that plaintiff was not negligent, and the conclusion that the Texas rule did not warrant in Utah the imputation of her husband's negligence to the plaintiff in the absence of a joint venture or joint control.

Wilson v. Oldroyd,[20] and Cahoon v. Pelton,[21] have been cited as indicative of the inclination of the Utah court to permit recovery for loss of consortium. It is true that the purpose of an action for alienation of affections is to recover damages for the loss of consortium and conjugal affection. Yet such actions are of different character, and their practical incidents differ. One is a direct attack upon the marital relation. The other indirect.[22] An action for

20. 1 Utah 2d 362, 267 P.2d 759 (1954).

21. 9 Utah 2d 224, 342 P.2d 94 (1959).

22. Prosser, Torts § 104 (2d Ed. 1955).

loss of consortium cannot be maintained by a husband for the negligent act of another even though otherwise allowable, if the wife has consented, assumed the risk, or is guilty of contributory negligence.[23] In an action for alienation of affections or for criminal conversation, however, recovery can be had by the husband even though the injury arises with the consent or even enticement of the guilty spouse.[24] Moreover, in Utah and in most other states, an action for criminal conversation or alienation of affection may be maintained indiscriminately by the wife or the husband irrespective of whether damages for loss of consortium in a negligence case can be recovered by either, both, or neither.

It seems fair to conclude, therefore, that neither the Utah Supreme Court, nor the United States Circuit Court of Appeals in interpreting Utah law has given us any express guidance. Clearly *Paul*, based as it was upon California law furnishes no foundation for a conclusion as to Utah law, and to the extent that *Robinson* relied on *Paul* either in the initial submission to the jury or on appeal, the little force to be attached to the mere reference to "consortium" would seem to be dissipated. On the other hand, there are general expressions in the Utah cases and the Circuit decision cited which indicate that the Utah statute may be inhospitable to the claim of consortium.

In such a posture, recourse to other available sources of information may not be out of place, particularly as they may relate to the relevant legal experience in the state and as they may explain a singular aspect to be hereinafter noted.[25] I already have commented on the unique wording of Utah's Married Women's Act, which in and of itself has significance in view of Utah's otherwise plenary recognition of the equal status of married women in contrast to the archaic common law rules. Our legal history and experience since the Act was adopted seems also highly significant.

In my years at the trial bar the presentation of consortium claims in negligence cases did not come to my attention. Numerous cases were handled by associates whose experience spanned the turn of the century where such claims would have been appropriate if recognized by Utah law, and no such contentions were ever advanced on behalf of or against their clients as far as I am aware. I have spoken to many seasoned trial attorneys whose experience and observations have been similar. In a few cases arising since I have become a judge I have known of the problem to be lurking around the corners of pleadings, as have other judges with whom I have talked, but such claims have never been pressed to a final decision in this court, nor to any substantial extent in state courts as far as I can ascertain.[26] But whatever the experience has been locally, with this concept since the date of *Paul* (1953), it seems clear that up until that time by

23. 27 Am.Jur. Husband and Wife § 507 (1954).

24. Cahoon v. Pelton, 9 Utah 2d 224, 342 P.2d 94, supra; Wilson v. Oldroyd, 1 Utah 2d 362, 267 P.2d 759, supra.

25. "The life of the law has not been logic; it has been experience."—Holmes: The Common Law.

26. I am informed that in one case a state district court judge on special interrogatories of a jury allowed a $3,000 verdict for loss of consortium to a husband, but that after judgment the total award, including damages to the wife, was compromised in termination of a contemplated appeal. In another case in the same district loss of consortium was submitted as an element of damages but the jury declined to assign any damages to this element. In another district these claims have been submitted on a few occasions with a similar negative result, and as we have seen in *Robinson* a small recovery on such a claim was secured. There may have been other such cases in lower courts but they would not have been numerous. Few of the attorneys practicing most extensively in the negligent injury field even now press claims for loss of consortium. This may be as much due to the poor results obtained on such claims and the feeling that they dilute or weaken their primary claims, as to any question about the theoretical propriety of consortium claims in Utah.

common acceptance of the bench and bar over generations, consortium was not considered an element of damage under Utah law as, a practical matter either in the trial courts or the Supreme Court of the state. Under such circumstances the comment of the court in Criqui v. Blaw-Knox Corporation, 318 F.2d 811 (10th Cir. 1963), supra, has added force here:

> "Moreover, to our knowledge, this is the first case, on an appellate level, in the more than one hundred years of Kansas judicial history, in which a wife has sought relief for this kind of an alleged wrong. That fact is a strong indication that during all of those years it has been the accepted law of the state that no such cause of action existed."

■ Similar comment seems equally or more pertinent here where up to the time of *Paul* consortium claims apparently were not urged in either the trial or appellate courts following the adoption of the married women's statute. It is true that we constantly learn things about the law, and that past errors properly are subject to correction even though pervasive or long standing. Yet, on the point of the return to the old common law rule contended for by plaintiffs it is difficult to suppose that this history involved a blanketing mistake, that so many judges and attorneys were wrong for so long and that so many legislatures accepted for so long such widespread error, concerning the meaning and effect of Utah's Married Women's Act. Rules commonly accepted and acted upon by the bar and inferior courts may nevertheless be laws of the state under the *Erie* doctrine although the highest court of a state may have never passed upon them.[27]

The contrast between this general experience over generations and the recent sporatic recognition of the consortium contention under Utah law is striking and renders a decision more difficult. Perhaps the apparent paradox may be explained by the fact that the opinion in Paul v. Kirkendall, supra, does not disclose on its face that the injuries in question arose in California, coupled with the promulgation of a uniform jury instruction for Utah in indicated reliance on *Paul*.[28] The propriety of such an instruction has not been passed upon by the Supreme Court as such; and by reason of the circumstances indicated in the margin, despite the difficult nature of the problem posed, the term itself and the limited experience under it may not be accepted as indicating a considered rejection by the courts of the long standing experience to the contrary.[29]

27. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), supra.

28. "90.18 *Damages for Loss of Wife's Services (Consortium)*
"Use introductory paragraph on damages No. 90.1 and continue:
"In awarding such damages you should award him such sum as you find from a preponderance of the evidence will reasonably compensate him for any loss of the companionship, aid, society and services of his wife that he has suffered [and is reasonably certain to suffer in the future] as a proximate result of the defendant's negligence.
"In determining what is just compensation you should consider, as shown by the evidence, the character and conditions of the home where the plaintiff and his wife [have] dwell[ed]; the services, if any, the wife has performed in the management of the home [and the services the wife has rendered in rearing of the children in the home], [and any assistance the wife has given the plaintiff in the management of his business].
"In determining that amount, if any, your object shall be to fix the pecuniary value of the companionship, aid, society and services thus lost, [and the present pecuniary value of any future loss of the same nature]. The relationship the wife sustains to the husband is a special and peculiar one and the law furnishes no way by which to measure what is reasonable compensation, but it is left to the sound discretion of the jury, considered in the light of the evidence and your experience in life, to determine what is reasonable compensation.
"Concluding paragraph on damages No. 90.1.
"Cf. BAJI 178 and 178–A.
"Paul v. Kirkendall, 1 Utah 2nd 1, 261 P.2d 670."

29. Three or four years after the Paul decision, July Instruction Forms-Utah

As a result of historical developments, it would be natural in this state that the breadth and depth of recoveries by the wives for their own injuries should tend to fill in and compensate for any theoretical injustice or inadequacies that proponents elsewhere may apprehend from the non-recognition of the right of consortium in negligence cases. I have no doubt that state law and practice with respect to the measure of damages in favor of the wife, as well as her right to recover generally in Utah have been geared to a recognition of the absence of this consortium right, including suits based on loss of services.[30] As some proof of this may be cited the almost complete omission of consortium claims from suits filed by most experienced plaintiffs' attorneys even after *Paul* and JIFU. This is in wholesome and favorable contrast to the rules in many "consortium states" where a wife living with her husband cannot herself recover damages for loss of capacity, time or earnings in connection with her household duties without an assignment from her

(JIFU) (1957) was published by the Utah State Bar. These forms were prepared by a distinguished committee of Utah judges and lawyers headed by the present Chief Justice of the Utah Supreme Court, who edited the publication. I have counted the creation of this committee as the most beneficial action taken by the Utah State Bar during my term as President. Except for such token support and the more concrete assistance of subsequent bar commissioners, however, the committee is entitled to complete credit, and had little or no occasion to reiterate the disclaimer of "infallibility" contained in the preface to the publication of the forms (p. vii). Its work has proved of the highest merit and benefit to bench and bar throughout the state, and the forms it collected and refined have been found through experience to be remarkably apt, helpful and accurate as jury instructions under Utah law. However, a combination of circumstances could have led to the inadvertent inclusion of Form 90–18 entitled "Damages for Loss of Wife's Services (Consortium)". Since the Book of Approved Jury Instructions (BAJI), under the laws of California, was used as the basis of the committee study and adaptation to Utah law, the appearance of Paul v. Kirkendall about the time the committee began its study may have led to the assumption on the part of committee members that the California rule had been authoritatively determined to prevail in Utah. In any event, the annotation under Form 90.18 in JIFU contains only the following reference: "Cf. BAJI 178 and 178–A; Paul v. Kirkendall, 1 Utah 2d 1, 261 P.2d 670." The district judge who gave the consortium instruction in the *Robinson* case (now a member of the Supreme Court) was a member of the committee. In any event, it seems probable that most instructions requested or given on consortium in Utah, as few as they have been, stemmed from the form attributed to Paul v. Kirkendall. I have not felt at liberty even informally to discuss this matter with members of that court, since their decisional committal as a part of the court more properly will occur if and when the question officially comes before them. I have had to base my decision on the other indications of the Utah rule to which I have referred. On the latter basis I am constrained to predict that were the question before the Supreme Court as it is before me, that court would not reach a contrary result. Despite the participation in the approval of Form 90.18 JIFU by two of the present members of the court, only those who do not know the character of its members as well as I do would think this prediction imprudent. Whether it is right or wrong, I am sure that if and when they confront this problem as members of the court each justice will resolve it as he thinks right, uninfluenced by any pride of authorship or former inadvertence, if any.

30. California's statutory and legal background in this field has been essentially different, which may afford at least some basis there (even though the doctrine of consortium cannot now be accepted) to equivocate with the idea of "loss of services". See West v. City of San Diego, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929 (1960). Since loss of services originally was a conceptual basis for "loss of consortium" and since either doctrine would return Utah to the confusion and uncertainty which are inclining modern authorities toward the rejection completely of the distinctions between the rights of husband and wife, the distinction sought to be applied in California has no basis in Utah's statutory or legal history. On the contrary, the Utah statute, unlike most married women's acts as we have seen, almost expressly negates the California doctrine of "loss of services".

husband.[31] On the other hand, it seems likely that extreme difficulty and confusion, as well as injustice, would be fostered and compounded if the usual problems of overlapping or duplicative awards and other difficulties experienced in states generally recognizing the right were superimposed upon our past experience in the field of damages for personal injuries.[32]

Even were a judge free to write authoritatively upon an unmarked page he might hesitate now to commit this state against the wording of our somewhat unique statute to a resuscitation of the common law rule or any temporizing version thereof with respect to the husband's right unless prepared also to go far beyond that rule and accord to the wife a corresponding right. This could be an immediate practical effect.[33] Then it would be but a short step conceptually at least to recognize on the part of the children of injured husbands a corresponding right to recover damages for loss of society or support.[34] Unless and until the Utah State Legislature or the Supreme Court of the State of Utah expressly charts the course, it would be presumptuous under the circumstances for the federal court to initiate and foster such a new and, in my judgment, retrogressive and confusing system for the state.

The motions to strike the second and fourth claims of the amended complaint are granted.[35]

31. Anno: 151 ALR 479, 486.

32. Section 27 Am.Jur. Husband and Wife ¶¶ 515–518, under heading (Torts against Consortium) "Distinction Between, Effect on Each Other of, and Splitting, Joinder and Consolidation of Suits".

33. Only recently in Owen v. Illinois Banking Corporation, 260 F.Supp. 820 (W.D. Mich.1966), it was held that denying a wife the right to sue for loss of consortium while permitting such suit by the husband, would deny the wife's right to equal protection under the Fourteenth Amendment; and the wife was permitted by the federal court to recover for loss of consortium despite the contrary state rule. Cf. Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.

2d 1366, supra. But see Deshotel v. Atchison, Topeka & Santa Fe Railway Co., 50 Cal.2d 664, 328 P.2d 449 (Cal. 1958) supra.

34. Cf. Hoffman v. Dautel, 189 Kan. 165, 368 P.2d 57 (1962).

35. Whether a husband in view of the Utah statute may recover as special damages the costs and expenses sustained by him not in connection with any damage for loss of consortium, but by reason of his duty of care and support and his actual expenses in connection therewith, need not be determined since the pleadings here present no such refinement. Cf. Rodgers v. Boynton, 315 Mass. 279, 52 N.E.2d 576, 151 A.L.R. 475 (Mass. 1943).