Greg **HACKFORD** and Sherrie
Hackford, Plaintiffs and
Appellants,

v.

**UTAH POWER & LIGHT CO.**, a Utah
corporation, Western Petroleum, Inc., a
Utah corporation, and Does I through
X, Defendants and Respondents.

No. 20208.

Supreme Court of Utah.

June 9, 1987.

C. Richard Henriksen, Jr., and David Michael Jorgensen, Salt Lake City, for plaintiffs and appellants.

Robert Gordon and David A. Westerby, Salt Lake City, for Utah Power & Light.

Gary D. Stott and Michael K. Mohrman, Salt Lake City, for Western Petroleum.

ZIMMERMAN, Justice:

Appellant Sherrie Hackford appeals from a Rule 12(b)(6) dismissal of her claim for loss of consortium. The issue presented on appeal is whether in Utah a wife may maintain an action for loss of consortium for an injury to her husband caused by a third party's alleged negligence. We adhere to our prior decisions and hold that neither spouse has a right to recover for the loss of consortium under Utah law. The judgment below is affirmed.

Sherrie Hackford alleges in her complaint that her husband, Greg Hackford, suffered an incapacitating injury when his head came in contact with a high-tension electrical power line maintained by defendant Utah Power & Light Company. She further alleges that as a result of her husband's severe and permanent injuries, she has lost the services, society, companionship, advice, and conjugal fellowship her husband otherwise would have been able to provide. Utah Power & Light Company filed a Rule 12(b)(6) motion to dismiss Hackford's claim. The trial court granted the motion to dismiss based on the authority of *Ellis v. Hathaway*, 27 Utah 2d 143, 493 P.2d 985 (1972), and *Tjas v. Proctor*, 591 P.2d 438 (Utah 1978). Those cases held that the common law cause of action for loss of consortium had been abolished in Utah by the Married Woman's Act of 1898.

On appeal, Hackford's principal argument is that *Ellis* and *Tjas* were wrongly decided, as was the earlier decision on the same issue by United States District Judge Sherman Christensen in *Black v. United States*, 263 F.Supp. 470 (D. Utah 1967). She contends that the common law right of

a husband to sue for loss of consortium does exist in Utah and that it should be made equally available to wives.

As a preliminary matter, it is necessary to briefly review the Married Woman's Act and the *Ellis, Tjas,* and *Black* decisions. At common law, "a husband had a claim for loss of consortium against one who negligently injured his wife, though the wife had no corresponding right." *Black v. United States,* 263 F.Supp. at 471. In 1898, the common law of England was expressly adopted as the law that should govern in the Utah courts,

> so far as it is not repugnant to, or in conflict with, the constitution or laws of the United States, or the constitution or the laws of this state and so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people hereof. . . .

R.S.1898 ch. 1907, § 2488; Utah Code Ann. § 68–3–1 (1986). In 1898, the Utah legislature also passed the Married Woman's Act, which provides in pertinent part:

> There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband.

Utah Code Ann. § 30–2–4 (1984).

The effect of this statute on the common law right to sue for loss of consortium was not considered in a judicial opinion until 69 years later, when Judge Christensen wrote his lengthy opinion in *Black.* Judge Christensen was confronted with a complaint seeking damages for loss of consortium. The action was in federal court by reason of diversity jurisdiction, and the governing law was that of Utah. Judge Christensen thought that the Married Woman's Act could be read as abolishing the loss-of-consortium cause of action because a loss-of-consortium cause of action could be characterized as a husband's right of recovery "on account of personal injury or wrong to

his wife," but he also conceded that the Act's intent was less than clear. He then made an extensive analysis of the law as it was apparently understood by the Utah courts and bar. He found that the loss-of-consortium cause of action was entirely unknown to the Utah courts and bar from the turn of the century until the 1960s. Given this fact and the wording of the Married Woman's Act, Judge Christensen concluded that the existence of the cause of action was sufficiently problematic that he would not permit such a claim to be presented in federal court.

The Utah Supreme Court did not consider the impact of the Married Woman's Act on the loss-of-consortium cause of action until five years after *Black.* In *Ellis,* the Court summarily disposed of a husband's claim for loss of consortium by stating that the Married Woman's Act had placed a husband and a wife on equal footing: neither had such a claim. In *Tjas,* the Court similarly disposed of a woman's cause of action for loss of consortium. Neither *Ellis* nor *Tjas* contains any detailed explication of the Act's rather uncertain language.

In asking that we hold that a loss-of-consortium cause of action does exist in Utah and that it extends to wives as well as husbands, Hackford argues that a careful reading of the Married Woman's Act in context shows that it had no impact on the loss-of-consortium cause of action. Specifically, she contends that the right to sue for loss of consortium is a right to sue for harm done not to the wife, but to the interest the husband has in his relationship with his wife. Therefore, the Married Woman's Act is best read as simply empowering a married woman to sue in her own name for physical injuries done to her. At common law, she had no such right; only a husband could sue for injuries suffered by his wife. This construction of the Married Woman's Act leaves the loss-of-consortium cause of action alive and well and available to vindicate a spouse's relational interest that is harmed when the other spouse is disabled from fulfilling his or her role in the relationship.

Hackford suggests that if we agree with her reading of the statute, we should not feel bound to follow our contrary decisions in *Ellis* and *Tjas*, but should consider the matter as though it were presented to us for the first time. As a basis for disregarding *Ellis* and *Tjas*, she argues that in those cases, this Court blindly followed the federal court decision in *Black v. United States*, 263 F.Supp. 470 (D. Utah 1967), which was wrongly decided. Therefore *Ellis* and *Tjas* do not represent an independent determination of the issue by this Court and ought not be accorded any real precedential weight.

Whatever merit there might be to Hackford's interpretation of the Married Woman's Act in the abstract, we do not think that *Ellis* and *Tjas* can be so easily ignored. First, despite Hackford's suggestion to the contrary, *Black* did not purport to settle Utah law on the question of whether the loss-of-consortium cause of action had been abolished by the passage of the Married Woman's Act. All Judge Christensen did was decide that in the absence of any decision from this Court on the point, his duty was to attempt to determine the law of Utah and follow it. Because he believed the matter to be in doubt, Judge Christensen decided that it was inappropriate for a federal court to declare the existence of the cause of action. He expressly stated that if the cause of action existed in Utah, that fact would have to be announced by the legislature or by this Court. This hardly amounts to a definitive statement of Utah law.

Second, *Ellis* and *Tjas* do not represent a blind following of *Black*. The Court in *Ellis* did not rely, uncritically or otherwise, on *Black*. Although *Black* was decided in 1967, five years before *Ellis*, *Black* was not mentioned in the briefs filed with this Court by the parties to the *Ellis* appeal, and it was not mentioned by the Court in the *Ellis* opinion. Therefore, *Ellis* must be considered to be an independent interpretation of the Married Woman's Act.

The briefs in *Tjas* did cite *Black*, and the opinion cited *Black*. However, *Ellis* was not cited to or by the *Tjas* Court. *Tjas*,

then, amounted to a second and independent interpretation of the Married Woman's Act by this Court that conforms in result to that in *Ellis*. This conclusion is not negated by the fact that *Black* was cited by the *Tjas* Court. Given the fact that Judge Christensen did not purport to answer definitively the question of what the Utah law was on the loss-of-consortium issue, the mere fact that the *Tjas* Court cited *Black* does not mean that one can fairly imply, as does Hackford, that the *Tjas* Court did not reach or independently consider the arguments of the parties on the loss-of-consortium question.

What we have, then, are two relatively recent decisions of this Court interpreting an 1898 statute and holding that the loss-of-consortium cause of action does not exist in Utah. Should we accept Hackford's arguably "better" interpretation of the Married Woman's Act and overturn those decisions simply because neither represents a long-settled judicial interpretation of the statute and neither contains a particularly persuasive analysis of the issue? The answer must take into account the fact that we are not dealing with an interpretation of the common law, which this Court may alter to conform with evolving standards and changing times. Rather, we are dealing with an interpretation of a statute.

As a general proposition, a judicial interpretation of a statute becomes a gloss on that statute that is, in effect, part of the statute. Ordinarily, changes in statutes and their glosses are best left to the legislature. However, there are no absolutes in this area. As a practical matter, we can and do, on occasion, depart from a prior statutory interpretation. The real question is whether, in a given case, we should take this rather unusual step. Several factors are pertinent to that determination, among which are the plausibility of the existing interpretation given the statute, the degree to which that interpretation has worked itself into the state of the law, and the strength of the arguments for changing that interpretation.

Before discussing the plausibility of the interpretation *Ellis*, *Tjas*, and *Black*

gave to Utah's Married Woman's Act, a rather lengthy digression is necessary to set the stage. The traditional common law justification for the loss-of-consortium cause of action that a husband had for the injury of his wife was that the husband had lost the services of his wife and was entitled to recover their value. *See, e.g.,* W. Prosser & W. Keeton, *The Law of Torts* § 125, at 931–32 (5th ed. 1984). The concept of the services owed to the husband by the wife came to include affection, society, and sexual relations. *See, e.g.,* Holbrook, *The Change in the Meaning of Consortium,* 22 Mich.L.Rev. 1, 2 (1923); Prosser & Keeton, *supra,* at 931. However, this broader concept of services was still treated as a characteristic of the husband's "interest" in his wife, rather than as an aspect of a "relationship" participated in by both parties. *See* Holbrook, *supra,* 22 Mich.L.Rev. at 2–4; Comment, *Negligent Injury to Family Relationships: A Reevaluation of the Logic of Liability,* 77 Nw.U.L.Rev. 794, 796–97 (1983).

Around the turn of this century, many states, including Utah, passed married women's acts. In the years that followed, the courts almost unanimously held that these acts did not confer upon a wife the right to sue one who negligently injured her husband for any resulting loss of consortium, although the husband was generally held to have retained his right to sue. *See* Holbrook, *supra,* 22 Mich.L.Rev. at 4–7. The reasons given for this disparate treatment of husband and wife varied; to avoid it, some courts went so far as to abolish the husband's right to sue for loss of consortium. *Id.* at 7; Comment, *supra,* 77 Nw.U.L.Rev. at 797–98. It appears that courts refused to recognize a wife's right to sue for a loss of consortium largely for two reasons. First, they had misgivings about the consequences of expanding the availability of the cause of action, such as the possibility of double recovery by a husband and a wife for the same harm. Second, their thinking on the issue was bounded by the common law's conceptualization of the cause of action as being based on a husband's right to his wife's services. Since the wife had no analogous right to

her husband's services, she had no theoretical grounding for a loss-of-consortium cause of action. *See* Prosser & Keeton, *supra* p. 5, at 931; Comment, *supra* p. 1284, 77 Nw.U.L.Rev. at 797–98.

In 1950, this conceptual barrier to expansion of the cause of action was shattered by the United States Court of Appeals for the District of Columbia Circuit in *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C.Cir.), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), *overruled on other grounds sub nom., Smither and Co. v. Coles,* 242 F.2d 220 (D.C.Cir.1957). The *Hitaffer* court discarded the traditional right-to-services basis for the cause of action and adopted Prosser's statement that "[t]he loss of 'services' is an outworn fiction, and the wife's interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband." 183 F.2d at 818 (quoting W. Prosser, *Handbook of the Law of Torts,* at 948 (1941)). The court held that the wife had an equal interest in the marital relationship and an equal right to sue for loss of consortium. The logic of *Hitaffer* was apparently irresistible, for it quickly resulted in the almost universal extension to the wife of a loss-of-consortium cause of action. *See* Prosser & Keeton, *supra* p. 1284, at 932; Comment, *supra* p. 1284, 77 Nw.U.L.Rev. at 798.

This background is necessary because it serves to place Utah's 1898 Married Woman's Act in historical perspective. In appraising the plausibility of the interpretation given the Married Woman's Act in *Ellis* and *Tjas,* Hackford argues as though the *Hitaffer* view of the cause of action was in vogue at the time Utah's statute was passed. In fact, it was not. She also argues as though it is utterly unreasonable to interpret the Married Woman's Act as having abolished the husband's loss-of-consortium cause of action. We disagree.

The Act provides that "[t]here shall be no right of recovery by the husband on account of personal injury or wrong to his wife...." Utah Code Ann. § 30-2-4 (1984). In 1898, the cause of action was understood to rest on the husband's common law right to his wife's services, rather than the post-*Hitaffer* view that the action

is for harm to the more intimate and personal interest in the relationship between husband and wife. Against this common law conceptualization of the cause of action, it does not seem entirely illogical to construe the language of the Married Woman's Act as eliminating the husband's right to recover for the loss of his wife's services "on account of personal injury or wrong" done to her by a third party. And that may be exactly the reading Judge Christensen found that the members of the Utah Bar had given the provision during the first half of this century before *Hitaffer* was decided. This would account for the rather surprising lack of any decisions by this Court on the issue until comparatively recently and for the observation of Judge Christensen in *Black* that the cause of action was essentially unknown to the Utah Bar.[1]

As demonstrated above, then, there is a measure of plausibility to the interpretation given the Act by *Ellis Tjas,* and *Black,* although the treatment given the issue in *Ellis* and *Tjas* are certainly not models of analysis or persuasion.

The next question in determining whether we should depart from the existing interpretation of the Married Woman's Act is whether that interpretation has become so fixed in the fabric of the law that it is beyond our reach. This aspect of the inquiry raises several subsidiary issues. The first is whether the interpretation in question has become settled in the minds of the bench and bar. Here we are confronted with an unusual situation. Normally, an interpretation of a statute achieves a "settled" status only after this Court decides the issue and that interpretation then remains unchallenged for many years. *See Mountain States Telephone and Telegraph Co. v. Salt Lake County,* 702 P.2d 113 (Utah 1985). However, here the

law has followed a somewhat different course. The bar and bench first informally construed the Married Woman's Act as having modified the common law; only later did this Court recognize that construction.[2] We see no fundamental reason why the order of events should make any difference in deciding whether we should depart from the decisions in question. Without regard to the order of proceeding, the fact remains that if we depart from *Ellis* and *Tjas,* we will change an interpretation of the Married Woman's Act that has been settled insofar as the bar is concerned for almost 90 years. This certainly argues for adhering to *Ellis* and *Tjas* on the ground that the interpretation they reflect has become a part of the law. *See id.*

But it is not enough to say that an interpretation is settled. Whether we should deem it to be beyond our reach to change also should depend on the degree to which the interpretation, however old, has been woven into the fabric of the law. *See id.* at 118–19 (Zimmerman, J., concurring). Here, there were no cases on the question until relatively recently, and the legislature has not amended the Married Woman's Act since its passage; therefore, we have no strong reason to believe that it has adopted the interpretation set forth in *Ellis* and *Tjas. See id.* This argues that we accord the interpretation less reverence because while the interpretation is settled, it is not so enmeshed in the substance of the law that it could not easily be changed without having many unanticipated ramifications and without conflicting with real or presumed legislative intentions. Another related factor relevant to the weight to be accorded the interpretation set out in *Ellis* and *Tjas* is that it operates to modify a common law cause of action, not to construe a statute that operates in an area of the law which is largely the province of the

---

1. Having said that it is not unreasonable to interpret the Act as abolishing the loss-of-consortium cause of action, we recognize that this is not the only reasonable construction of the Act. If we were considering the Act today on a clean slate, we might follow Hackford's reading. Her construction does seem to accord with the plain meaning of the statute.

2. Of central importance here is the fact, noted by Judge Christensen in *Black,* that from the turn of the century until the mid–1960s, the bench and bar of Utah assumed that the cause of action did not exist, a fact confirmed by *Ellis* and *Tjas.* Nothing in the appellant's briefs contests Judge Christensen's statement of the assumed status quo.

legislature. *Cf. id.* This factor, too, argues for less reverence for the interpretation at issue.

Overall, then, the principal argument for letting the *Ellis* and *Tjas* interpretation stand is its settled nature. However, we judge that alone to be an insufficient reason to place a reappraisal of its correctness beyond our reach. But even under these circumstances, persuasive policy reasons must exist which would justify taking that step. We do not find them here.

Hackford argues that the loss-of-consortium cause of action is necessary to vindicate the interests of the parties in their mutual relationship and to compensate them for harm done to that interest, *a la Hitaffer.* But it is not enough to rely on the perceived need to compensate someone for a harm suffered. There are other equally weighty practical factors that must be taken into account in evaluating claims for expanded tort causes of action. *Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 798–800 (Utah 1985); *see, e.g.,* Sugarman, *Doing Away with Tort Law,* 73 Calif. L.Rev. 555 (1985); Comment, *supra* p. 5, 77 Nw.U.L.Rev. 794 (1983). For example, we should consider very carefully where we may later be led by the adoption of such a cause of action and endorsement of its current conceptual foundation.

As the previous discussion of *Hitaffer* suggests, the new "relationship" conceptual ground for the loss-of-consortium cause of action is quite different from that upon which the cause of action was based at the time of the passage of our Married Woman's Act. This means that by announcing the existence of this cause of action in Utah, we would, in effect, be establishing a cause of action that has the potential to evolve into something quite different from

the cause of action *Ellis* and *Tjas* held was abolished by the Act. There is nothing inherent in the logic of the cause of action as it is now recognized around the country that limits its availability to spouses. It could as easily be extended to all negligent infliction of emotional harm upon children, in-laws, lovers, and close friends. In recent years, courts and commentators have struggled mightily to find limiting principles for claims based on such relational interests, but appear to have failed. *See, e.g., Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 525 P.2d 669, 115 Cal.Rptr. 765 (1974); *Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 563 P.2d 858, 138 Cal.Rptr 302 (1977); *Butcher v. Superior Court,* 139 Cal.App.3d 58, 188 Cal.Rptr 503 (4th Dist.1983); *Grant v. Avis Rent A Car System, Inc.,* 158 Cal.App.3d 813, 204 Cal. Rptr 869 (Cal.Ct.App.2d Dist.1984); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982); Note, *Loss of Consortium: Should California Protect Cohabitants' Relational Interest?,* 58 S.Cal.L.Rev. 1467 (1985); Note, *Limiting the Cause of Action for Loss of Consortium,* 66 Calif.L.Rev. 178, 430–46 (1978); Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L. Rev. 722 (1976); *cf. Developments in the Law—The Constitution and the Family,* 93 Harv.L. Rev. 1156, 1270–95 (1980). As review of these sources demonstrates, the result is profound confusion about where the limits of the cause of action lie and rather arbitrary line-drawing.

Under these circumstances, we do not find persuasive the policy reasons for departing from *Ellis* and *Tjas.*[3] If the cause

---

3. Utah's statutory recognition of recovery for wrongful death and this Court's recognition of an action for alienation of affection do not argue for recognition of the loss-of-consortium cause of action. The wrongful death action seems distinguishable from a loss-of-consortium claim. *See* Comment, *supra* p. 5, 77 Nw.U.L. Rev. at 810–12. But even if logic cannot entirely support the distinction, *see Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318, 331 (1982); *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 563 P.2d 858, 866, 138

Cal.Rptr. 302, 310 (1977) (Mosk, J., dissenting), logic is not the sole measure by which the extension of a cause of action is to be judged. The fact that the constitution and the legislature have recognized one cause of action does not mean that we must adopt any cause of action that can cast itself in a similar light.

As for this Court's recognition of the alienation-of-affection cause of action in *Nelson v. Jacobsen,* 669 P.2d 1207 (Utah 1983), its contin-

of action argued for by the appellant is to be created anew in Utah, it should be done by the legislature.

The trial court is affirmed.

HOWE, Justice (concurring in the result);

I concur in the result. While I agree with much of the majority opinion, I cannot subscribe to the statements that the plaintiff's construction of Utah Code Ann. § 30-2-4 "does seem to accord with the plain meaning of the statute"; that the majority's construction is not the only reasonable one; that the statute contains "rather uncertain language"; and that we have "no strong reason to believe" that the legislature has adopted our interpretation of the statute in *Ellis v. Hathaway* and *Tjas v. Proctor*. Nor do I subscribe to the majority's criticism of those decisions.

To me, it is clear that section 30-2-4 abolishes the common law right of a husband to recover loss of consortium from his wife's tort-feasor. The second sentence of that section is direct and forthright:

> There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband.

The plaintiff contends that because a husband seeks consortium for an injury to himself, he is not recovering anything "on account of personal injury or wrong to his wife." This reasoning is not sound. The husband's action for consortium is derivative. If the wife has no cause of action for her injuries, the husband has none for consortium. *See Pioneer Construction Co. v. Bergeron*, 170 Colo. 474, 462 P.2d 589 (1969); Annot., 21 A.L.R.3d 469. Thus, although the husband's damages may be different from the wife's, any recovery by him is inescapably "on account of the personal injury or wrong to his wife." Furthermore, if it were not intended that the statute abolish all right of recovery by the husband, it would not have been necessary to authorize the wife to recover in her action medical expenses paid or assumed by her husband. He could and should recover those expenses himself in his consortium action. I find it difficult to believe that in emancipating women from the shackles of the common law, the legislature would leave undisturbed the most offensive shackle of all, consortium, which had its basis in the concept that a wife was a chattel of her husband. The plain and clear language of section 30-2-4 indicates no such legislative intent.

The comparison made by the plaintiff between an action for loss of consortium and an action for wrongful death or for alienation of affections is unavailing. Actions for wrongful death are protected by the Utah Constitution, article XVI, section 5, and were unaffected by the legislative enactment of section 30-2-4. Actions for alienation of affections are not derivative from a tort committed on the alienated spouse. The latter is not injured at all. Rather, alienation of affections arises from a tort committed on the nonalienated spouse by interference with his or her marriage contract. An action by a husband for alienation of affections such as *Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983), can in no wise be said to be brought "on account of personal injury or wrong to his wife," as prohibited by section 30-2-4.

The dissenting opinion states that married women's acts have generally not been interpreted to abolish the husband's right to consortium. This may be so, but that generality is of little aid here since we do not have before us the language contained in other statutes to compare with ours. The dissenters have not undertaken any such comparison. However, U.S. District Judge A. Sherman Christensen in *Black v. United States*, 263 F.Supp. 470 (1967), observed that the insertion of the second sentence in section 30-2-4 made that statute significantly distinguishable from most other married women's acts which have been construed to permit recovery for loss of

ued existence is a historical anomaly and should not be relied on to create new causes of action.

consortium by husbands. He noted that section 55–36 of the Code of Virginia (1950) was similar in many respects to our section 30–2–4 in that they both affirmatively deny the husband a right of recovery or action for the personal injury of the wife. The Virginia statute has been interpreted to deny a husband the right to maintain an action for loss of his wife's consortium. *Felch v. Air Florida, Inc.*, 562 F.Supp. 383 (D.D.C.1983); *Carey v. Foster*, 345 F.2d 772 (4th Cir.1965).

It was wisely observed by the Pennsylvania Supreme Court in *In re Burtt's Estate*, 353 Pa. 217, 44 A.2d 670, 162 A.L.R. 1053 (1945), that "a statutory construction once made and followed should never be altered upon the changed views of new personnel of the court." More recently, the Supreme Court of Oregon in *State v. Clevenger*, 297 Or. 234, 683 P.2d 1360 (1984), stated that "statutory interpretation particularly implicates the rule of stare decisis. When this court interprets a statute, that interpretation becomes 'a part of the statute as if written into it at the time of its enactment.'" (Citations omitted.) The court then quoted with approval the following statement from *Cottrell v. CIR*, 628 F.2d 1127, 1131 (8th Cir.1980):

> The doctrine of stare decisis, weighty in any context, is especially so in matters of statutory construction. For in such cases congress may cure any error made by the courts. Until it does, the bar and the public are justified in expecting the courts, except in the most egregious cases, neither to depart from previous interpretations of the statute, nor to give them a grudging application.

I am mindful that forty-seven states have recognized the right of a spouse to recover consortium for personal injuries sustained by his or her spouse. This has been done either by judicial decision or by a statute conferring that right. However, in none of the cases which I have examined where it was done by judicial decision was there a situation comparable to ours, *viz.*, there was a statute which for ninety years had been interpreted to deny such right. In an effort to "join the crowd" and to sidestep our statute which stands in the way, the plaintiff would have us reinterpret the statute and give it an entirely new meaning. The forum for repealing a statute is the legislature. Courts should not engage in the repealing process by denying the statute's meaning as ascribed by practical construction and judicial decisions for almost a century. The legislature has met annually for fifteen years since 1972 when *Ellis v. Hathaway* was decided. No legislation has been enacted to reverse or modify our decision in that case. So far as this writer knows, no legislation has ever been introduced to do so. This indicates legislative acceptance to me.

It is true that some courts, *e.g.*, *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.App. 3d 382, 525 P.2d 669, 115 Cal.Rptr. 765 (1974), and *Nicholson v. Hugh Chatham Memorial Hospital, Inc.*, 300 N.C. 295, 266 S.E.2d 818 (1980), have recognized that it was their responsibility to shape and mold the common law of their states to meet changing times and conditions. In so doing, they concluded that the time had arrived, if they were to more completely compensate those who were damaged by torts, to restore the common law right of consortium to the husband and, to achieve equality, to extend that right to the wife. Such action may not be improper since courts may overturn judicially fashioned rules. However, these courts did not overturn the well-settled interpretation of a statute in the process and reverse a legislative exercise of constitutional power.

I fully agree with the majority that if the right to consortium is to be given in this state, the proper approach should be for the legislature to do it by modifying the language of section 30–2–4. In so doing, the legislature can give that right to both husband and wife. It can also consider how far that right should be extended to others, such as to children who likewise suffer when a parent is tortiously injured. In fact, with the high rate of divorce in this country, a persuasive argument can be made that children suffer longer and more intensely than does a spouse. Since most torts are compensated for, if at all, by insurance purchased by the tort-feasor, the

cost and reasonable availability of insurance are inexorably related to the enlargement of the circle encompassing those persons entitled to recover damages. However admirable in the name of justice it is to attempt to compensate everyone who suffers at the hand of the tort-feasor, boundaries around liability must be drawn. See *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 722 P.2d 955 (1986), holding that parents may maintain a cause of action for loss of consortium against a third party who negligently injures their *adult* child, and *Butcher v. Superior Court*, 139 Cal.App.3d 58, 188 Cal.Rptr. 503, 40 A.L.R.4th 539 (1983), holding that an unmarried cohabitant may recover consortium from the tort-feasor of his or her cohabitant. The legislature is peculiarly equipped to draw the lines. We are not. The following comments by Chief Justice Schaefer of the Illinois Supreme Court, dissenting in *Dini v. Naiditch*, 20 Ill. 2d 406, 433, 170 N.E.2d 881, 894 (1960), are pertinent here:

> Each man's life is linked to the lives of many others, and an injury to one inevitably has its impact upon the lives of others. So far as I am aware, however, it has never been suggested that everyone who is adversely affected by an injury inflicted upon another should be allowed to recover his damages. It may be possible to argue that the relationship of husband and wife has distinctive characteristics that would justify a recovery which is denied to those who stand in other relationships to the injured person. But no such argument is advanced in the majority opinion, and it is hard to see why, for example, the wife of an injured man should be allowed a recovery that is denied to his children. If the boundaries of permissible recovery are to be extend-

ed, they should be extended upon a realistic appraisal of the factors involved, and not to achieve consistency with an outworn common law cause of action.

HALL, C.J., concurs in the concurring opinion of HOWE, J.

DURHAM, Justice (dissenting):

I cannot agree with Justice Zimmerman's interpretation of Utah Code Ann. § 30–2–4 (1984), his analysis of the relevant case law, or his refusal to allow spouses a cause of action for loss of consortium due to negligent injury by a third party. I therefore dissent.

In this case, the trial court dismissed appellant's claim on the basis that Utah does not recognize a cause of action for loss of consortium on behalf of the wife of an injured plaintiff. That result was dictated by this Court's decisions holding that "the wife has no basis for her action [for loss of consortium]," *Ellis v. Hathaway*, 27 Utah 2d 143, 144, 493 P.2d 985, 986 (1972), and that "a husband may not maintain a loss of consortium action for the claimed negligent injury to his wife." *Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979).

At common law, "a husband had a claim for loss of consortium against one who negligently injured his wife, though the wife had no corresponding right." *Black v. United States*, 263 F.Supp. 470, 471 (D.Utah 1967). The common law right to recover for loss of consortium in Utah, however, was never explicitly addressed by any court until the federal district court discussed it in 1967 in *Black*.[1] In *Black*, the federal district court held that The Married Woman's Act eliminated a husband's common law right to recover for loss of consortium. Thereafter, this Court followed the rationale of *Black* without

---

1. At the time the district court in *Black* made its ruling, the Utah Supreme Court had considered on two occasions claims by the husband for loss of the wife's services. The first case, *Paul v. Kirkendall*, 1 Utah 2d 1, 261 P.2d 670 (1953), upheld a $5,000 award to the husband for loss of services. *Paul* is not controlling because it applied California law, but it should be noted that California has since granted both spouses the right to recover for loss of consortium.

*Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 525 P.2d 669, 686, 115 Cal.Rptr. 765, 782 (1974). In the second case, *Robinson v. Hreinson*, 17 Utah 2d 261, 409 P.2d 121 (1965), this Court affirmed, without comment, an award of $742 to the husband for loss of consortium. It appears the appellants had not challenged the propriety of the consortium award, thus the decision in *Robinson* did not treat the question.

analysis and rejected the cause of action for both wives and husbands in *Ellis* and *Tjas,* respectively. In so doing, the Court failed to adopt a rule now espoused by nearly all other states.[2] In my judgment, this Court has never sufficiently analyzed the right to recover for loss of consortium arising from negligent injury. The current state of our law depends instead upon an unexamined federal precedent. Accordingly, I undertake an independent analysis here and would hold that each spouse has a cause of action for loss of consortium, as defined herein, arising from a negligent injury to the other spouse caused by a third party. I would decline to follow the decision of the United States district court in *Black* and would overrule our prior opinions in *Ellis* and *Tjas.*

*Definition and Nature of Consortium Action*

"Consortium" refers to the right of one spouse to the conjugal fellowship of the other. *Black's Law Dictionary* defines consortium as the right of each spouse "to the company, society, co-operation, affection and aid of the other in every conjugal relation." *Black's Law Dictionary* 280 (5th ed. 1979); *see also Nelson v. Jacobsen,* 669 P.2d 1207, 1225 (Utah 1983) (Durham, J., dissenting). While at common law recovery for loss of consortium by the husband was based upon loss of services, custody, and conjugal affection, Holbrook, *The Change in the Meaning of Consortium,* 22

Mich.L.Rev. 1 (1923), damages for loss of consortium no longer include loss of services since those damages are properly considered to be part of the injured spouse's claim. *Hitaffer v. Argonne,* 183 F.2d 811 (D.C.Cir.), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), *overruled on other grounds sub nom., Smither and Co. v. Coles,* 242 F.2d 220 (D.C.Cir.1957); see also Utah Code. Ann. § 30–2–4 (1984). Generally, an action for loss of consortium encompasses the injury to the marital relationship from the loss of society, affection, companionship, sexual relations, and conjugal fellowship. *See Hitaffer,* 183 F.2d at 814.

The cause of action for loss of consortium is a separate and distinct action that belongs to the nonphysically injured spouse. *See infra* note 4. Although the action is nominally derivative in the limited sense that it arose out of or was occasioned by an injury to the spouse, an action for loss of consortium is in fact an action for direct injury to the plaintiff spouse who no longer has the marital benefits of society, comfort, and protection. *See, e.g., Hitaffer, supra* note 2, at 816 ("Marriage gives each [spouse] the same rights.... Each is entitled to the comfort, companionship, and affection of the other.... Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right

---

**2.** The leading case recognizing the wife's right to recover for loss of consortium is *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C.Cir.), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), *overruled on other grounds sub nom., Smither and Co. v. Coles,* 242 F.2d 220, 226 (D.C.Cir.1957). Since *Hitaffer,* forty-seven states have recognized by judicial decision or by statute the wife's right to recover for loss of consortium. See Annot., 36 A.L.R.3d 900 (Supp.1986) for a list of the decisions and statutes in thirty-five states; the states not listed in the A.L.R. supplement are: Connecticut, *Hopson v. St. Mary's Hospital,* 176 Conn. 485, 408 A.2d 260 (1979); Kansas, *Albertson v. Travis,* 2 Kan. App.2d 153, 576 P.2d 1090 (1978); Kan.Stat. Ann. § 23–205 (1981); Maine, Me.Rev.Stat.Ann., tit. 19, § 167–A (1981); Maryland, *Deems v. Western Maryland R.R.,* 247 Md. 95, 231 A.2d 514 (1966); Nebraska, *Luther v. Maple,* 250 F.2d 916 (8th Cir.1958) (interpreting Nebraska state law); New Jersey, *Ekalo v. Constructive Serv.*

*Corp.,* 46 N.J. 82, 215 A.2d 1 (1965); North Carolina, *Nicholson v. Hugh Chatham Memorial Hosp.,* 300 N.C. 295, 266 S.E.2d 818 (1980); Rhode Island, *Mariani v. Nanni,* 95 R.I. 153, 185 A.2d 119 (1962); South Carolina, S.C.Code Ann. § 15–5–170 (1976); Tennessee, Tenn.Code Ann. § 25–1–106 (1980); Vermont, *Whitney v. Fisher,* 138 Vt. 468, 417 A.2d 934 (1980); Wyoming, *Weaver v. Mitchell,* 715 P.2d 1361 (1986). Utah and Virginia have interpreted their respective state statutes to deny either spouse the right to recover for loss of consortium. *See Harford Mutual Ins. Co. v. Bruchey,* 248 Md. 669, 238 A.2d 115 (1966) (applying Va.Code Ann. § 55–36 (1959), which contains an express provision barring consortium claims). New Mexico is the only state to deny by judicial decision the right to recover for loss of consortium to either spouse. *Roseberry v. Starkovich,* 73 N.M. 211, 387 P.2d 321 (1963), *aff'd sub nom., Tondre v. Thurmond-Hollis-Thurmond, Inc.,* 103 N.M. 292, 706 P.2d 156 (1985).

arising out of the marriage relation.") (quoting *Bennett v. Bennett,* 116 N.Y. 584, 23 N.E. 17, 18 (1889)) (emphasis omitted); *Millington v. Southeastern Elevator Co.,* 22 N.Y.2d 498, 239 N.E.2d 897, 899, 293 N.Y.S.2d 305, 308 (1968) (Injury from loss of consortium "is personal to the wife. It is the interest which may have turned a happily married woman into a life-long nurse and deprived her of the opportunity of rearing children.... [T]he mental and emotional anguish caused by seeing a healthy, loving companionable mate turned into a shell of a person is real enough. To describe the loss as 'indirect' is only to evade the issue."); *Peeples v. Sargent,* 77 Wis.2d 612, 253 N.W.2d 459, 471 (1977) ("The cause of action for consortium occasioned by an injury to one marriage partner is a separate cause of action belonging to the spouse of the injured marriage partner.... [L]oss of consortium is a direct injury to the spouse who has lost the consortium.").

*Husband's Common Law Right to Recover for Loss of Consortium*

At common law, there were two reasons why a husband was the only spouse who could recover for loss of consortium. First, the doctrine of coverture recognized the husband as the sole legal entity in marriage. A wife could not contract, own property, or sue or be sued in her own name. Thus, she could not bring suit for personal injuries she suffered; she had to sue jointly with her husband. Moreover, any damages recovered by her belonged entirely to the husband. 41 Am.Jur.2d *Husband and Wife* § 440 (1968); *see also Stoker v. Stoker,* 616 P.2d 590 (Utah 1980). Second, a wife had no legally recognized right to her husband's services. The wife traditionally had a right to the husband's "protection and support," while only he had a right to his wife's "services." *See Nelson v. Jacobsen,* 669 P.2d at 1224 (Durham, J., dissenting). Thus, only the husband had a cause of action for loss of consortium at common law because of the legal restrictions of coverture and the different marital obligations of each spouse.

*Effect of Married Woman's Act*

The Utah legislature recognized the inequitable position of a wife at common law and in 1898 enacted the Married Woman's Act. *See* Rev.Stat. of Utah 1898, §§ 1198 to 1207, now found at Utah Code Ann. §§ 30–2–1 to –10 (1984). The Married Woman's Act relieved a married woman of the disabilities of coverture and granted her status equal to that of an unmarried woman. *W.W. Clyde v. Dyess,* 126 F.2d 719, 722 (10th Cir.), *cert. denied,* 317 U.S. 638, 63 S.Ct. 24, 87 L.Ed. 514 (1942). Section 30–2–4 grants women the right to sue and be sued and provides in pertinent part:

> A wife may receive the wages for her personal labor, maintain an action therefore in her own name and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried. There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband.

*Id.*

Justice Zimmerman adopts the view that section 30–2–4 eliminates a husband's common law right to recover for loss of consortium. This interpretation originated in *Black v. United States,* 263 F.Supp. at 473, 480, when the United States District Court for the District of Utah concluded that the second sentence of section 30–2–4 eliminated the husband's common law right to maintain a cause of action for loss of services, aid, comfort, society, and companionship arising out of negligent injury to his wife. In reaching that conclusion, the district court was deciding a new question of Utah law without the benefit of prior decisions by the Utah Supreme Court or express guidance from the Utah legislature. The court observed that the second sentence of 30–2–4 was unique to the Utah statute and concluded that the Utah statute

should therefore be construed differently from other married woman's acts, which had been interpreted not to affect the husband's common law rights. *Id.* at 473. Much of the *Black* opinion relied upon the trial judge's observations that, in his experience, members of the Utah Bar did not consider loss of consortium to be an element of damages under Utah law, that public policy disfavored the possibility of double recovery, and that allowing the husband to recover for loss of consortium would lead to a similar action for wives and possibly children. *Id.* at 479–80.

Shortly after the decision in *Black*, this Court relied on section 30–2–4 to hold that a husband may not recover for his lost wages and the babysitting expenses incurred as a result of his wife's personal injury. *Corbridge v. M. Morrin and Son, Inc.*, 19 Utah 2d 409, 432 P.2d 41 (1967). In *Corbridge*, the Court said, "The wife, if anybody, should recover the expenses incurred in connection with her injuries. The reasonable value of the services which she was unable to perform as a result of her injuries and which she otherwise would have performed would be part of her recovery if any she is entitled to." *Id.* at 410, 432 P.2d at 42. Unlike the husband in *Black*, Mr. Corbridge did not claim damages for loss of companionship, society, and conjugal relations. Mr. Corbridge only claimed damages for additional expenses the family incurred as a result of the personal injury to his wife. By denying recovery to the husband for the value of the wife's services, the opinion in *Corbridge* comports with the precise language of section 30–2–4 and the generally accepted position that loss of consortium does not include loss of services.

However, in *Ellis v. Hathaway*, 27 Utah 2d 143, 144, 493 P.2d 985, 986 (1972), this Court implicitly accepted *Black*'s construction of the statute and thus rejected a wife's claim for loss of support, companionship, love, and affection due to the negligent injury of her husband. The Court reasoned that section 30–2–4 placed a husband and wife on an equal basis by barring either of them from recovering for loss of consortium. 27 Utah 2d at 144, 493 P.2d at 986. Then in *Tjas v. Proctor*, 591 P.2d 438 (Utah 1979), this Court held that a husband may not bring an action for loss of consortium[3] arising out of the negligent injury to his wife. *Id.* at 440.

Although *Tjas* and *Ellis* ruled on the principles raised in this case, they both relied explicitly or implicitly and without analysis on *Black*'s holding that section 30–2–4 bars a husband from bringing an action for loss of consortium. This presents the anomalous circumstance of a state court deferring to a federal court's analysis of a question of state law. Construction and interpretation of state statutes are principally the responsibility of state courts. H. Black, *Handbook on the Law of Judicial Precedents*, § 110–11, at 366 (1912).

The federal district court in *Black* mistakenly construed section 30–2–4 to bar a husband's independent action for loss of consortium. The action for loss of consortium is meant to compensate a spouse for his or her own injury arising from the loss of companionship, affection, society, and conjugal relations. The language of section 30–2–4, "There shall be no right of recovery by the husband on account of personal injury or wrong to his wife," does not prevent a husband from recovering for *his own injuries* that are proximately caused by injuries to his wife. The statute merely prevents a husband from recovering personal injury damages *suffered by*

---

**3.** The opinion in *Tjas* does not expressly state whether Mr. Tjas was seeking damages for "consortium" as defined herein or loss of services or both. The Court simply stated, "[A] wife is permitted to recover for *loss of service* to her family as a result of her injuries and this loss, sometimes referred to as consortium, is properly part of the wife's claim only.... [A] hus-band may not maintain a loss of consortium action for the claimed negligent injury to his wife." *Tjas*, 591 P.2d at 440 (footnote omitted; emphasis added). Thus, it appears that the Court understood Mr. Tjas to be seeking damages for the loss of his wife's *services*, which, consistent with *Corbridge*, are part of the wife's claim only.

*his wife.* The foregoing interpretation is buttressed by the fact that the statute expressly prohibits the husband from recovering for medical expenses or loss of his wife's services. These amounts provide a measure of the value of the injury to the wife for which she alone is entitled to recover.

As Justice Zimmerman points out, section 30–2–4 must be interpreted in light of the historical conditions at the time of its enactment. *See Howe v. Jackson,* 18 Utah 2d 269, 421 P.2d 159 (1966). At common law, the restrictions of coverture required that the husband pursue an action for his wife's personal injuries and recovery of damages belonged to the husband. When viewed in this context, the first sentence to section 30–2–4 expressly permits a wife to bring an action for her own personal injuries without joining her husband. The second sentence confirms that the wife—and not the husband—is entitled to recover the proceeds from any judgment as if she were an unmarried woman. Thus, by adding the second sentence to section 30–2–4, the Utah legislature simply insured that all common law restrictions on the wife's ability to maintain an action and recover a judgment were eliminated.

The foregoing analysis of section 30–2–4 is consistent with our decisions permitting parental recovery for the loss of society, love, and companionship in cases in which the claim arises out of wrongful death, *Jones v. Carvell,* 641 P.2d 105, 108 (Utah 1982), or spousal recovery for the intentional tort of alienation of affections. *Nelson v. Jacobsen,* 669 P.2d 1207, 1215 (Utah 1983). In *Nelson,* we recognized that each spouse has a valuable and protectible "interest in the marriage relationship, including its intimacy, companionship, support, duties and affection." *Id.* at 1215. I find no logical reason to permit an action for loss of consortium for an intentional tort, yet prohibit the action for a negligent tort. In both cases, the harm to a protectible interest in the marital relationship and the injury to the spouse are the same.[4] Furthermore, the literal interpretation espoused by Justice Zimmerman does not explain why a husband cannot recover for loss of consortium but can recover for the wrongful death of his wife when section 30–2–4 dictates, "There shall be no right of recovery by the husband on account of personal injury or wrong to his wife." The distinction between deceased and incapacitated spouses should be one of degree only. As the Arizona Supreme Court stated: "Often death is separated from severe injury by mere fortuity; and it would be anomalous to distinguish between the two when the quality of consortium is negative-

---

4. The district court in *Black* distinguished the action of alienation of affections as a "direct" attack on the marital relationship, whereas the claim for loss of consortium in a negligence action is an "indirect" attack. *Black,* 263 F.Supp. at 476–77. This is a meaningless distinction. In speaking of the wife's right to consortium, the Ohio Supreme Court observed in *Clouston v. Remlinger Oldsmobile Cadillac, Inc.,* 22 Ohio St.2d 65, 73, 258 N.E.2d 230, 235 (1970):

There certainly is no doubt today that the wife of a husband who has been incapacitated suffers great pain and endures constant anguish, particularly if she is denied the opportunity to have children.... When a person is injured either intentionally or negligently, to the extent that such person can no longer be a companion and is no longer capable of giving love, affection, society, comfort and sexual relations to his or her spouse, that spouse has suffered a direct and real personal loss.

Moreover, I believe that principles of tort law make the direct-indirect distinction meaning-

less. The New Jersey Supreme Court relied on traditional tort principles in *Ekalo v. Constructive Serv. Corp.,* 46 N.J. 82, 89–90, 95, 215 A.2d 1, 5, 8 (1965), when it rejected the argument that a wife's injuries are indirect:

The position that [the wife's] injuries are indirect or too remote to warrant legal protection runs counter to basic principles of negligence and causation. ... While engaging in their activities, the defendants clearly came under the comprehensive common law duty of due care with tort liability for its breach. If, as alleged, they acted without due care causing serious bodily injury to the husband and consortium deprivation to the wife, they should, in all justice, be held liable in fair measure for the respective losses. Those losses were immediate and consequential rather than remote and unforeseeable and, there being no sufficient countervailing policy, the law now rightly views them as remediable by the responsible tortfeasors.

*Id.* at 89–90, 95, 215 A.2d at 5, 8.

ly affected by both." *Howard Frank, M.D., P.C. v. Superior Court,* 150 Ariz. 228, 230, 722 P.2d 955, 957 (1986). The words of section 30-2-4 were obviously not intended to mean that a husband can never recover for damages to him caused by injuries to his wife.

Several policy grounds were relied upon by the district court in *Black* to justify an interpretation of section 30-2-4 that eliminated the husband's cause of action. First, it was argued that a cause of action by the nonphysically injured spouse would result in double recovery for the same wrong. *See Black,* 263 F.Supp. at 480. The problem with this argument, however, is that it is based on the mistaken assumption that the husband and the wife are seeking recovery for the same wrong. It ignores the fact that the injury to consortium is a separate and distinct loss to the nonphysically injured spouse. The argument against double recovery was aptly summarized by the California Supreme Court in *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 404, 525 P.2d 669, 683, 115 Cal.Rptr. 765, 779 (1974):

> Virtually every decision granting the wife the right to recover for loss of consortium ... has considered and rejected [the double recovery argument].... The cases have made it crystal clear that recovery of damages for impairment of "his" ability to participate in a normal married life does not necessarily compensate for the impairment of "her" ability to participate in that life.

The rule against double recovery prevents both the husband and the wife from recovering for the lost wages, medical expenses, and other expenses of the injured spouse. Recovery of those damages is properly part of the claim of the injured spouse only. In contrast, loss of consortium reflects loss of society, companionship, affection, and conjugal relations, elements that are personal to the noninjured spouse. Thus, compensating the noninjured spouse for damages for a personal loss of consortium cannot result in double recovery. *Rodriguez,* 12 Cal.3d at 405-06, 525 P.2d at 684-85, 115 Cal.Rptr. at 780-81.

*Black* also asserts that permitting a husband to recover for loss of consortium would lead to a corresponding right for anyone who loves and shares a close relationship with the injured person, such as the parents, the children, the fiance, aunts and uncles, and possibly even business partners. *See Black,* 263 F.Supp. at 480.[5] Justice Zimmerman shares that concern. I do not agree that speculation regarding unrelated and merely potential litigation should preclude the availability of relief under long-standing, well-accepted tort doctrines in meritorious cases. *Ekalo v. Constructive Service Corp.,* 46 N.J. 82, 215 A.2d 1, 4 (1965). If increased litigation from such parties occurs, "the existence of a multitude of claims merely shows society's pressing need for [such] redress." *Howard Frank, M.D., P.C. v. Superior Court,* 150 Ariz. at 233-34, 722 P.2d at 960-61 (quoting *Dillon v. Legg,* 68 Cal.2d 728, 735 n. 3, 441 P.2d 912, 917 n. 3, 69 Cal.Rptr. 72, 77 n. 3 (1968), which recognized a loss-of-consortium cause of action for negligent infliction of emotional distress).

Finally, the respondents in this case argue that numerous procedural and substantive difficulties will arise if the noninjured spouse is permitted to recover for loss of consortium. Respondents contend that an action by the non-physically injured spouse raises problems concerning the effect of contributory negligence by the physically injured spouse, including whether negli-

---

5. *See generally Howard Frank, M.D., P.C. v. Superior Court,* 150 Ariz. 228, 722 P.2d 955 (1986) (holding that parents may maintain a cause of action for loss of consortium against a third party who negligently injures their *adult* child); *Hay v. Medical Center of Vermont,* 145 Vt. 533, 496 A.2d 939 (1985) (recognizing minor child's remedy for negligent deprivation of parental consortium); *Butcher v. Superior Court of Orange County,* 139 Cal.App.3d 58, 188 Cal.Rptr. 503 (1983) (awarding compensation to unmarried cohabitant upon showing that nonmarital relationship is "stable and significant"); *Elden v. Sheldon,* 164 Cal.App.3d 745, 210 Cal.Rptr. 755 (1985) (limiting compensation to married couples).

gence should be imputed to the nonphysically injured spouse, overlapping statutes of limitation, the necessity of joinder of all nonphysically injured plaintiffs, settlement of claims by different parties, and the effects of res judicata and collateral estoppel on the claim of the noninjured plaintiff. While these procedural problems may be substantial, the appropriate response is not to arbitrarily eliminate a common law cause of action altogether. I am unable to find any authority that supports the contention that these procedural problems justify the abrogation of the cause of action for loss of consortium.[6] On the contrary, 94 percent of the other states in the Union obviously cope with these purported problems.[7]

In my judgment the rationale relied on in *Black v. United States* is flawed, and I would decline to follow that case. The enactment of section 30–2–4 only affected the husband's common law right to recover for his wife's services. The husband's right to recover for loss of consortium was in reality unaffected by the enactment of the Utah Married Woman's Act. Because *Tjas v. Proctor* and *Ellis v. Hathaway* are is inconsistent with this conclusion, I would overrule those decisions.

*Wife's Right to Recover for Loss of Consortium*

The remaining question in this analysis is whether a wife has a cause of action for loss of consortium parallel to that of a husband. The answer, I submit, is clearly yes.

Article IV, section 1 of the Utah Constitution provides, "The rights of citizens of the State of Utah shall not be denied or abridged on account of sex. Both male and female citizens of this state shall enjoy equally all civil, political and religious rights and privileges." Plain interpretation of this provision requires that married women enjoy the same civil right and privilege to maintain an action for loss of consortium as married men. I therefore conclude that article IV, section 1 of the Utah Constitution grants to married women the same right to recover for loss of consortium that married men had at common law. I would hold that the appellant in this case is entitled to maintain a cause of action to recover for loss of consortium as it is defined in this opinion.

STEWART, Associate C.J., concurs in the dissenting opinion of DURHAM, J.

---

6. *See* 36 A.L.R.3d 900 (Supp.1986).

7. *See supra* note 2. Many jurisdictions have relied upon joinder rules to deal with several of the problems posed by respondents. I consider joinder of the spouses to be advisable to eliminate many of the procedural problems respondents mention and to avoid any jury confusion regarding double recovery. One of the best opinions on the subject of joinder of husband and wife in consortium claims is *Diaz v. Eli Lilly & Co.,* 364 Mass. 153, 302 N.E.2d 555 (1973). There, the court explained:

> As a practical matter, the consortium claim, when asserted at all, will usually be presented together with the negligence claim for the physical injuries, husband and wife joining in the same action. Such joinder is of course permitted and invited by the procedural rules.

> When, perchance, separate actions have been brought, the defendant (or plaintiffs in the actions) would normally be entitled to have them consolidated for trial. Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries.

302 N.E.2d at 560–61 (footnotes omitted).

The analysis of the joinder issue in *Diaz* was based upon rules very similar to the Federal Rules of Civil Procedure. That analysis is equally applicable in this state because we have adopted rules based on the federal rules.