Lori CRUZ and Nicholas A. Cruz,
Plaintiffs and Appellants,

v.

Jed WRIGHT, Defendant and Appellee.

No. 20465.

Supreme Court of Utah.

Nov. 2, 1988.

Samuel King, Jeffrey O. Burkhardt, Salt Lake City, for plaintiffs and appellants.

D. Gary Christian, Gregory J. Sanders, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiff Lori Cruz appeals from the trial court's dismissal of her claim for loss of consortium arising out of injuries suffered by her husband in an automobile accident caused by defendant Jed Wright. Her primary argument on appeal is that article I, section 11 of the Utah Constitution—the open courts provision—prevented the legislature from abolishing the husband's common law cause of action for loss of consortium and that we should extend a parallel cause of action to the wife. We adhere to our prior decisions and hold that in passing the Married Women's Act of 1898, the legislature eliminated the common law loss-of-consortium cause of action. We further hold that the 1898 Act did not run afoul of article I, section 11.

Following an automobile accident in which Nicholas Cruz was injured, Nicholas and his wife, Lori, filed an action against the driver of the other car, Jed Wright, alleging that Nicholas was injured as a

result of Wright's negligence. The complaint further alleged that because of those injuries, Nicholas had incurred medical expenses and had lost wages and Lori had lost the benefits of her husband's society, companionship, and affection. Nicholas sought damages for his injuries, and Lori sought to recover for loss of consortium.

On the first day of trial, Wright successfully moved to dismiss the loss-of-consortium claim. The case then went to trial on Nicholas's negligence claim. The jury found Wright 100 percent negligent and awarded Nicholas $142,784.34. That judgment has been paid by Wright and is not part of this appeal. The sole issue before us is whether the trial court properly dismissed the loss-of-consortium claim.

At common law, a husband could maintain a claim for loss of consortium against a third party who negligently injured his wife; his wife had no corresponding right. *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1282 (Utah 1987); *id.* at 1289 (Durham, J., dissenting); *Black v. United States*, 263 F.Supp. 470, 471 (D. Utah 1967). In addition, only the husband could assert actions on behalf of his wife for injuries she might suffer at the hands of third persons because the wife was legally barred from suing or being sued. *Hackford*, 740 P.2d at 1291 (Durham, J., dissenting). As explained in *Hackford*, the loss-of-consortium cause of action was traditionally based on the notion that the husband had a right to his wife's services and an injury to her accordingly injured him. *Id.* at 1284; *id.* at 1291 (Durham, J., dissenting). The concept of services later came to include affection, society, and sexual relations. *Hackford*, 740 P.2d at 1284; W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 125 (5th ed. 1984).

Beginning in the 1840s, many states passed married women's acts. One of the main purposes of these acts was to create a right in married women to sue on their own behalf for personal injuries caused by third parties. *See Hackford*, 740 P.2d at 1291 (Durham, J., dissenting). Although married women's acts gave married women their own legal existence, the courts almost unanimously held that these acts did not confer a right to bring consortium claims arising out of injuries to husbands. *Hackford*, 740 P.2d at 1284. Some courts continued to hold, however, that a husband could maintain a right to sue for injuries to his wife. *Id.* Other courts, feeling that the married women's acts placed men and women on equal footing, abolished the husband's right to sue for loss of consortium. *Id.*

Courts continued to struggle with this disparate recognition of consortium claims until 1950, when the United States Court of Appeals for the District of Columbia Circuit discarded the traditional right-to-services basis for the cause of action and instead adopted the view that both husband and wife maintained an equal interest in a marital relationship and an equal right to sue for loss of consortium. *Hitaffer v. Argonne Co.*, 183 F.2d 811, 813–16, 819 (D.C.Cir.), *cert. denied*, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), *overruled on other grounds sub nom. Smither & Co. v. Coles*, 242 F.2d 220, 221, 226 (D.C.Cir.), *cert. denied*, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957); *see Hackford*, 740 P.2d at 1284. The *Hitaffer* view was subsequently adopted by a majority of state courts which today recognize loss-of-consortium actions in both husbands and wives. *Hackford*, 740 P.2d at 1284; *id.* at 1288 (Howe, J., concurring).

In *Hackford*, we were faced with the question of whether a common law cause of action for loss of consortium existed in Utah and, if so, whether it should be extended to wives. A majority of the Court concluded that the settled view in this state, as expressed in the opinions of this Court and the practices of the Bar, was that if such a cause of action ever existed, it was abolished by the passage in 1898 of the Utah Married Women's Act. 740 P.2d at 1285–87 & n. 2; *id.* at 1288 (Howe, J., concurring).

The present case urges on us a different theory for reaching the same result sought by the plaintiff in *Hackford*—the establishment in Utah of a *Hitaffer*-type loss-of-con-

sortium action for both husbands and wives. Lori Cruz's theory is that the common law loss-of-consortium cause of action existed at the time of the adoption of our constitution in 1896, that article I, section 11 of the constitution prohibits the alteration or abolition of any then-extant causes of action, that the 1898 Married Women's Act [1] found in *Hackford* to have abolished the cause of action was unconstitutional and, therefore, that the cause of action still survives. She then argues that we should, as a matter of equality between the sexes, make it available to both husbands and wives. We decline to accept this argument.

Nowhere in this state's jurisprudence is it suggested that article I, section 11 flatly prohibits the legislature from altering or even abolishing certain rights which existed at common law. *See Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 676, 680 (Utah 1985); *Brown v. Wightman*, 47 Utah 31, 32–34, 151 P. 366, 366–67 (1915); Utah Const. art. I, § 11. In fact, in *Berry*, we specifically stated that the legislature may eliminate or abrogate a cause of action entirely if there is sufficient reason and the elimination or abrogation "is not an arbitrary or unreasonable means [of] achieving the objective." 717 P.2d at 680. *Berry* also makes it clear that article I, section 11 is not to be read as preserving every common law cause of action that may have existed prior to 1896. 717 P.2d at 676.

Therefore, even if a loss-of-consortium cause of action did exist at common law in Utah (and there is no evidence that such an action did exist [2]), that would not prevent the legislature from modifying or abolishing that cause of action if necessary to serve sufficiently strong legislative ends. Having considered the question, we conclude that the passage of the Married Women's Act of 1898 was a reasonable legislative enactment intended and reasonably tailored to place men and women on equal footing with respect to their ability to bring actions for their own injuries and to extinguish the concept that a wife was the property of her husband. *See Hackford*, 740 P.2d at 1284–85; *id.* at 1287 (Howe, J., concurring); *id.* at 1291, 1293 (Durham, J., dissenting). If, in the process, the husband's right to sue for loss of his wife's consortium, which may have never existed in Utah, was abolished, we conclude that that abolition was not an unreasonable step.

We also note that in the present case, in contrast to *Berry*, the statute in question did not operate either to extinguish a cause of action after it had accrued or to limit the remedies available; it simply prevented one from ever arising. *See Hackford*, 740 P.2d at 1284–85; *id.* at 1288 (Howe, J., concurring).

The substance of Lori Cruz's other arguments were all disposed of in *Hackford v. Utah Power & Light Co.*, and there is no reason to deal with them at length here. They are rejected as being without merit. The trial court's order of dismissal is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART, J., concur.

DURHAM, J., concurs in the result.

---

1. The Married Women's Act provides as follows:

   A wife may receive the wages for her personal labor, maintain an action therefor in her own name and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried. There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses of medical treatment and other expenses paid or assumed by the husband.

   Utah Code Ann. § 30-2-4 (1984).

2. *See Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979); *Ellis v. Hathaway*, 27 Utah 2d 143, 144, 493 P.2d 985, 986 (1972); *Black v. United States*, 263 F.Supp. 470, 477–78 (D. Utah 1967); *cf.* Homer, *The Judiciary and the Common Law in Utah Territory, 1850–61*, 21 Dialogue: A Journal of Mormon Thought, Spring 1988, 97, 97–102, 104–07 (discussing hostility of territorial legislature and people to the common law).